**Samad SALEHPOUR, Plaintiff–Appellant,**

v.

**UNIVERSITY OF TENNESSEE, et al., Defendants–Appellees.**

No. 97–5468.

United States Court of Appeals, Sixth Circuit.

Argued April 30, 1998.

Decided Aug. 27, 1998.*

Rehearing and Suggestion for Rehearing En Banc Denied Oct. 29, 1998.

* This decision was originally issued as an "unpublished decision" filed on August 27, 1998.

Connie K. Westbrook (argued and briefed), Memphis, TN, for Plaintiff–Appellant.

Catherine S. Mizell (briefed), The University of Tennessee, Knoxville, TN, Odell Horton, Jr. (argued and briefed), University of Tennessee, Office of General Counsel and Secretary, Memphis, TN, for Defendants–Appellees.

Before: NELSON, BOGGS, and CLAY, Circuit Judges.

## OPINION

CLAY, Circuit Judge.

Plaintiff, Samad Salehpour, appeals from the order entered by the United States District Court for the Western District of Tennessee granting Defendant, the University of Tennessee's, *et al.*[1], motion for summary judgment in this case arising under 42 U.S.C. § 1981 and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.;* 42 U.S.C. § 1983; and ancillary state law claims of intentional and negligent infliction of emotional distress. For the reasons stated herein, the district court's order is **AFFIRMED.**

### STATEMENT OF FACTS

Plaintiff (who was forty-three years old at the time he filed this appeal) is a native of Iran and has been a citizen of the United States since 1979. Because of his Iranian

---

1. Plaintiff filed suit against the University of Tennessee (the "University") and twenty University administrators and faculty members.

ethnicity, Plaintiff is dark complected and speaks with an accent. Plaintiff was admitted to the College of Dentistry ("College") at the University of Tennessee ("University") as a first-year dental student on August 12, 1994, after a twelve-year career as a mechanical engineer in the aerospace industry.

Dr. William F. Bowles (Chair of the Department of Prosthodontics, Professor in the Department of Prosthodontics, and a Member of the Academic Status Committee (the "Committee") at the University), as well as Dr. Victor A. Fletcher (Associate Professor in the Department of Prosthodontics at the University), have a policy of barring first-year dental students from sitting in the last row of their classrooms. Dr. Bowles informed Plaintiff and his classmates on the first day of class of this policy. On January 31, 1995, Dr. Bowles and Dr. Lynch (Associate Dean of the College and a Professor in the Department of Orthodontics at the University) met with Plaintiff, at his request, regarding the "last row rule" and other matters of concern, such as Dr. Bowles classroom dress code. At the meeting, Dr. Lynch informed Plaintiff that Dr. Bowles had every right to tell his students where he wished them to sit in his classroom, and that by accepting admission into the College, Plaintiff agreed to abide by all of the rules, not just the ones that suited his temperament.

Less than one week later, Plaintiff wrote a letter to Dr. Bowles reiterating the same concerns addressed at the meeting, including Plaintiff's displeasure with the "last row rule." The next day, February 7, 1995, Plaintiff sat in the last row of Dr. Bowles' class. Dr. Bowles allowed Plaintiff to remain seated in the last row, so as not to disturb the class. However, in a letter dated February 9, 1995, addressed to Plaintiff, Dr. Bowles expressed his displeasure with Plaintiff's decision to sit in the last row (despite the numerous requests not to do so), and warned Plaintiff that he would be instructed to leave the classroom if he violated the "last row rule" again.

On February 13, 1995, Plaintiff sat in the last row of Dr. Fletcher's class (the other professor who had a policy against such conduct), in the presence of a guest lecturer, Dr.

John Dean. Dr. Fletcher requested that Plaintiff move from the last row to another seat; however, Plaintiff replied that he was comfortable where he was sitting and did not wish to move. Dr. Fletcher informed Plaintiff that if he did not move to another seat, he would have to leave the class. Dr. Dean intervened and urged Plaintiff to move because of the importance of the lecture. Plaintiff chose to leave the class, an action to which Dr. Dean allegedly took great offense. In response to this incident, Dr. Fletcher wrote a letter to Dr. Lynch, describing Plaintiff's disruptive conduct as being below the standards required of students of the College, and in violation of the professional ethics set forth in the College's *Center Scope* guidance manual. Dr. Fletcher also stated that he supported the initiation of disciplinary action against Plaintiff due to Plaintiff's misconduct and failure to maintain the proper level of professional standards. On February 14, 1995, Plaintiff sat in the last row of Dr. Bowles' class, and was asked to leave.

On February 15, 1995, Plaintiff wrote a letter to Dr. Lynch acknowledging his violation of the "last row rule" and complaining about being asked to leave Dr. Fletcher and Dr. Bowles' classes. The next day, Dr. Lynch responded to Plaintiff's letter with written notice that, in his opinion, Plaintiff's actions "represent[ed] misconduct and unethical and unprofessional behavior, as defined in *Centerscope 1994–95*, page 74" and, for that reason, he had asked Dr. Robbins (Chair of the Academic Status Committee) to convene the committee to determine whether Plaintiff's conduct warranted appropriate disciplinary action and penalties. Dr. Lynch also stated that he would inform Plaintiff of when and where the Academic Status Committee was going to meet to address the issue of Plaintiff's conduct, and that he would also inform Plaintiff of his rights and responsibilities attendant to the meeting.

A meeting of the Academic Status Committee was scheduled for March 1, 1995, for the purpose of conducting a hearing on Plaintiff's behavior in violating the "last row rule," and Plaintiff was given notice of this meeting via a letter sent by Dr. Robbins on February 21, 1995. Thereafter, in a letter dated Feb-

ruary 27, 1995, addressed to Dr. Fletcher and indicating that a copy had been sent to Dr. Bowles, Plaintiff acknowledged that he was aware of the scheduled meeting, and agreed, under protest, to move forward one row in the classroom until the meeting. Plaintiff also stated in this letter that the reason he wished to sit in the last row was because he could see better and had fewer distractions which increased his concentration and enhanced his learning.

The minutes from the March 1, 1995, meeting of the Academic Status Committee indicate that Plaintiff was given an opportunity to be heard, was fully aware of the charges against him, and was allowed to fully respond. Plaintiff alleged that he desired to sit in the last row because he could see and hear better in that location, and that he found sitting elsewhere to be disruptive to his thinking process. Plaintiff stated that he perceived the dispute over his decision to sit in the last row as a "power struggle" between him and the professors, and refused to comply with rule, especially since he had informed the professors how he felt about the issue. Plaintiff was allowed to make his assertions out of the presence of Dr. Lynch and Dr. Bowles.

The minutes also indicate that Dr. Lynch stated that, because Plaintiff had been informed on numerous occasions that he was obligated to follow the rules of the College and yet chose to disregard them, he felt that Plaintiff's actions rose to the level of a knowing, premeditated decision to defy rules and regulations of the College. In addition, the minutes indicate that Dan Pence (a member of the Academic Status Committee by virtue of his office as President of the first-year dental class), informed the Committee that Plaintiff had been a mild distraction to the class, and that "he ha[d] communicated to Mr. Salehpour that the class, as a whole, d[id] not agree with his pursuit of this."

The minutes then indicate that:

It was pointed out that Mr. Salehpour is an older student and might find certain rules restrictive and inappropriate. He is an engineer who has decided on dentistry as a profession. However, concern was expressed that if this was Mr. Salehpour's reaction to sitting in the back row of a classroom, how will he react in the clinic with patients under more restrictive and stressful situations.

(J.A. at 219.) With this and the other testimony in mind, the Committee consensus was that Plaintiff was guilty of misconduct, and unprofessional and unethical behavior. The Committee decided that a letter of severe reprimand would be sent to Plaintiff and that the letter would be incorporated into his academic record. In addition, it was decided that Plaintiff would be required to apologize in a timely fashion to his professors and classmates for the disruptive episodes during educational periods. Finally, it was decided that Plaintiff would be placed on disciplinary probation for the entirety of his matriculation at the College, and warned that he would be dismissed if found guilty of other academic infractions.

Thereafter, in a letter dated March 7, 1995, sent to Dr. Bowles, Plaintiff stated that he would not sit in the last row at least until such time that a final decision could be rendered regarding the Committee's recommendations, and any appeal that may be necessary could be heard. Plaintiff explained that his actions were still under protest, and that he desired to sit in the back row so that he could see and hear better, which ultimately enhanced his learning.

On March 17, 1995, Dr. William Slagle (Dean of the College of Dentistry) accepted the Committee's recommendations, and sent a letter to Plaintiff forming him of the Committee's final decision as well as his right to an appeal. Plaintiff requested an appeal of the final decision to the Ad Hoc Appeals Committee. Dr. Slagle granted the request for the appeal, urged Plaintiff to submit "objective information" that supported Plaintiff's perceived need for sitting in the last row, and asked Plaintiff to suggest three dates that would be convenient for him to appear before the Appeals Committee. Plaintiff replied with three possible dates and times convenient for him, Dr. Slagle chose one of the dates, and Plaintiff's appeal to the Ad Hoc Appeals Committee ensued on April 18, 1995.

Plaintiff appeared at the appeal and was allowed to speak out of the presence of Dr. Lynch. Thereafter, the Appeals Committee affirmed the decision against Plaintiff with modifications, and Slagle informed Plaintiff of the outcome of his appeal by way of letter dated May 4, 1995. Four days later, Plaintiff sent Dr. Slagle a letter informing him that Plaintiff was voluntarily withdrawing from the College. Despite his voluntary withdrawal from the College, Plaintiff still submitted appeals to Joseph E. Johnson (President of the University) and William R. Rice (Chancellor of the University), which were subsequently denied.

Plaintiff filed suit against Defendants alleging ethnic discrimination pursuant to 42 U.S.C. § 1981 and Title VI, 42 U.S.C. § 2000d *et seq.;* these claims were set out separately and incorporated by reference into Plaintiff's claims brought pursuant to 42 U.S.C. § 1983. Plaintiff's claims brought under § 1983 included ethnic discrimination, constitutional violations (free speech claim under the First Amendment, and due process and equal protection claims under the Fourteenth Amendment), and conspiracy. Plaintiff also filed claims against Defendants under the ADA and Rehabilitation Act, as well as ancillary state law claims for emotional distress. Plaintiff alleged that he was discriminated against because of his national origin, physical disability, and protest against the classroom rule prohibiting first-year dental students from sitting in the last row of certain classes. Thereafter, Defendants filed their Motion to Dismiss or for Summary Judgment along with affidavits from Chancellor Rice and President Johnson.

On March 10, 1997, the district court entered an "Order Granting Defendants' Motion for Summary Judgment on Plaintiff's Federal Claims and Dismissing Without Prejudice Plaintiff's State Law Claims." Plaintiff filed a motion for reconsideration of the district court's order, which was denied on April 11, 1997. This appeal ensued.

### DISCUSSION

### I.

Plaintiff first argues that the district court improperly adjudicated Defendants' motion to dismiss as a motion for summary judgment. Specifically, Plaintiff claims that the district court erred in granting Defendants summary judgment on his claims brought pursuant to Title VI, § 1981, and § 1983, as well as the ADA and the Rehabilitation Act, because Defendants failed to move in the alternative for summary judgment on these claims. We disagree.

In *Employers Insurance of Wausau v. Petroleum Specialties, Inc.,* 69 F.3d 98, 105 (1995), this Court stated a district court's decision to impose summary judgment *sua sponte,* and without notice, must be reviewed under two separate standards of review. "The substance of the district court's decision must of course meet the normal standards for summary judgement [sic]. However the procedural decision to enter summary judgment *sua sponte* must also be reviewed to determine if the court abused its discretion by entering the judgment on its own motion." *Id.* Accordingly, we will review the substance of the district court's decision regarding Defendants' motion *de novo, see Smith v. Ameritech,* 129 F.3d 857, 863 (6th Cir.1997), while reviewing the district court's procedural decision to enter summary judgment *sua sponte* for an abuse of discretion. *Petroleum Specialties, Inc.,* 69 F.3d at 105.

Defendants entitled their motion as a "Motion to Dismiss or for Summary Judgment," where all Defendants moved under Fed. R.Civ.P. 12(b)(6) to dismiss all claims, except for Rice and Johnson, who moved in the alternative for summary judgment under Fed.R.Civ.P. 56. Defendants Rice and Johnson submitted affidavits and various letters along with the motion to support their claim. In response to Defendants' motion, Plaintiff filed his response and approximately two-hundred pages of supporting materials. Specifically, Plaintiff submitted significant portions of the *"Center Scope 1994–95"* Student Handbook along with various other materials. (J.A. at 134–175). Thereafter, on March 10, 1997, the district court granted summary judgment to all defendants, almost eleven months after the motion was filed.

There is no per se prohibition on a district court entering summary judgment *sua sponte.* *Petroleum Specialties, Inc.*, 69 F.3d at 104. As noted by the Supreme Court in *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), "district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence." A district court can enter summary judgment *sua sponte* in certain circumstances; however, the most obvious example is when a district court considers materials outside the pleadings when ruling on a motion to dismiss brought under Rule 12(b)(6). *See* Fed. R.Civ.P. 12(b)[2]. Whether notice of conversion of a motion to dismiss to one for summary judgment by the court to the opposing party is necessary depends upon the facts and circumstances of each case. *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 393 (6th Cir.1975). Where one party is likely to be surprised by the proceedings, notice is required. *Id.*

Here, Plaintiff contends that, because the district court failed to provide him notice of its decision to convert Defendants' motion to dismiss brought under Rule 12(b)(6) to one for summary judgment (with respect to those nineteen defendants who failed to expressly move in the alternative), he was not given a reasonable opportunity to respond to such matters. However, because Plaintiff not only *had* ample time to respond to Defendants' motion, but actually *did* respond with over two hundred pages of materials, Plaintiff's contention flies in the face of logic and reason. We are not persuaded otherwise by Plaintiff's claim that the materials he submitted simply were in response to the affidavits and materials submitted by Rice and Johnson when they filed their alternate motion under Rule 56.

First, the voluminous materials submitted by Plaintiff go well beyond responding to the affidavits submitted by Rice and Johnson. These two Defendants filed an alternative motion for summary judgment with supporting affidavits for the purpose of showing their very limited involvement in Plaintiff's case. The record indicates that the more than two-hundred pages from the *Center Scope* Student Handbook as well as other materials filed by Plaintiff concerned far more than the allegations made by Rice and Johnson. Instead, the materials address those claims Plaintiff brought against the Defendants as a whole. Indeed, based upon the record presented and the facts surrounding this case, Plaintiff could have submitted few other materials in response to Defendants' motion. The information provided in the *Center Scope* Student Handbook addresses Plaintiff's claims in terms of the rights afforded him at the University and whether Defendants' actions violated those rights. Therefore, Plaintiff did, in fact, respond to a motion for summary judgment against all Defendants, and accordingly cannot be said to have been surprised by the district court's conversion. *See Dayco*, 523 F.2d at 393.

In addition, the record indicates that Plaintiff had ample opportunity to respond to Defendants' motion and any materials submitted therein. Specifically, the record indicates that the district court did not rule on Defendants' motion until approximately eleven months after it was filed. In *Fugarino v. Hartford Life & Accident*, 969 F.2d 178, 182–83 (6th Cir.1992), this Court held that the district court's grant of summary judgment was proper despite its failure to provide the Plaintiffs with notice of its decision to rely on matters outside the pleadings, where the Plaintiffs had approximately two years to respond to any evidence submitted by the Defendants. Therefore, where Plaintiff had eleven months to respond in the instant case, the district court did not abuse its discretion in considering matters outside the pleadings

---

2. Rule 12(b) states:

 If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

and converting Defendants' motion to dismiss to one for summary judgment. *Id.*

## II.

Plaintiff next argues that the district court erred in granting summary judgment on Plaintiff's § 1981 claim brought against Rice and on the issue of whether Rice and Johnson had any personal involvement in the alleged constitutional violations. Plaintiff raises three arguments in connection with this issue. We disagree with each of Plaintiff's claims.

*1.) Whether the district court erred in granting summary judgment to Rice and Johnson where these two Defendants failed to comply with Local Rule 11(d) of the United States District Court for the Western District of Tennessee.*

■ Plaintiff claims that the district court erred in granting Rice and Johnson's motion for summary judgment, where these Defendants failed to comply with Local Rule 11(d) of the United States District Court for the Western District of Tennessee. Specifically, Plaintiff claims that Rice and Johnson were in noncompliance with this Rule because they failed to enumerate each material fact alleged. Defendants claim that, although they technically failed to comply with this local rule, they nonetheless complied with the purpose of the rule (to make the opposing party aware of the material issues presented), by enumerating the paragraphs in their corresponding affidavits, which thereby set forth the facts to which Plaintiff was to respond.

In *United States v. Kingston,* 922 F.2d 1234, 1240 (6th Cir.1990), this Court stated that it would not deviate from its ordinary practice of declining to enforce local rules when a district court failed to do so. Recently, in *Stough v. Mayville Community Schools,* 138 F.3d 612, 615 (6th Cir.1998), this Court reversed the district court's dismissal of a case on the basis that the Plaintiffs failed to respond to the Defendants' motion for summary judgment within the ten-day time allotment as set forth in Eastern District of Michigan Local Rule 7.1(c). In doing so, this Court noted that a claim (or motion) should only be dismissed for failure to follow a local

rule in extreme circumstances. *Id.* at 614–15. We do not believe that the facts of this case present such extreme circumstances.

*2.) Whether the district court erred in summarily dismissing Plaintiff's claims brought under Title VI and § 1981 against Rice, where Rice failed to follow procedural requirements in conjunction with his motion and where genuine issues of fact remained on this issue.*

In reference to Plaintiff's Title VI and § 1981 claims addressing ethnic discrimination, Rice submitted his affidavit in support of the following statement made in the Memorandum of Law in Support of the Motion for Summary Judgment:

> Indeed, even if an inference of animus could be attributed to all members of the Appeals Committee, that body was authorized only to make a recommendation to Dean William Slagle of the College of Dentistry, who was the decision maker in this matter.

(Memorandum of Law in Support of Defendants' Motion to Dismiss and/or Summary Judgment, p 7; J.A. at 96.) Plaintiff claims that, because Rice did not file an affidavit from Dean Slagle in support of this statement, the district court should not have granted Rice summary judgment. In addition, Plaintiff also claims that, through the materials that he submitted in response to Rice's motion for summary judgment, Plaintiff established that a genuine issue of material fact remained for trial on these claims.

■ Plaintiff's contention regarding Rice's failure to support his statement with an affidavit from Slagle amounts to nothing more than form over substance, where Plaintiff is essentially postulating the same argument that was made regarding Local Rule 11. Accordingly, Plaintiff's argument on this issue is without merit. In addition, although Plaintiff contends that the materials he submitted in response to Defendants' motion for summary judgment created a genuine issue of fact regarding his claims brought under Title VI and § 1981 for ethnic discrimination, he fails to state what those issues of fact are, and why the issues of fact would be sufficient to go forward with these claims. As such,

Plaintiff waived this issue for appellate review. *See Figueroa–Rubio v. Immigration & Naturalization Serv.*, 108 F.3d 110, 112 (6th Cir.1997) (holding that where an appellant fails to support his claim with authority, this Court will decline review).

*3.) Whether the district court erred in summarily dismissing Plaintiff's claims brought against Rice and Johnson under § 1983 on the basis that these two Defendants did nòt have any personal involvement in a constitutional violation.*

Plaintiff contends that, although the district court did not specifically address this issue, it did so in effect when it granted summary judgment against all Defendants on this claim. Plaintiff claims that Rice and Johnson erroneously maintain that they could not be held liable based on *respondeat superior* liability, because Plaintiff never alleged such a form of liability.

We are not persuaded by Plaintiff's argument where his allegations against Rice and Johnson under the § 1983 claim amount to *respondeat superior* liability. The fact that Plaintiff did not couch his claim in such terms does not change the substance of the allegation (these two Defendants in their official "supervisory" capacity failed to prevent the alleged constitutional violations). Furthermore, Plaintiff relies upon case law based upon *respondeat superior* liability to support his claim. Therefore, once again, Plaintiff's hollow argument amounts to nothing more than form over substance. However, to the extent that Plaintiff's claim is considered on the merits, the claim must fail.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). In *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (1989), this Court embraced the proposition that supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act. Instead the liability must be based upon active unconstitutional behavior. *Id.*

■ Here, Rice and Johnson submitted affidavits of their lack of personal involvement in Plaintiff's allegations of constitutional violations. A review of these affidavits indicates that Rice and Johnson did not participate at any level of Plaintiff's disciplinary process until his appeal. (J.A. at 34, ¶¶ 3–4; 42–44, ¶¶ 3–10.) These Defendants specifically state in their affidavits that they had no personal knowledge of the alleged constitutional violations (discrimination based upon ethnicity) until the time the alleged violation occurred. (J.A. at 35, ¶ 6; 43–44, ¶ 8.)

In response to these affidavits Plaintiff submitted voluminous portions of the Student Handbook along with letters submitted *after* he voluntarily left the University and filed suit. Plaintiff claims that a review of these materials indicates that these Defendants knew of his disability and played an active role in the alleged discrimination. We disagree and find Plaintiff's claim to be disingenuous, at best. Interestingly, the *first time* Plaintiff specifically references his alleged disability (head, neck, and spinal problems that necessitated his being seated in the last row of the classroom) was in his letter dated May 8, 1995, by which he resigned from the College. However, despite this inconsistency (i.e., that Defendants could not knowingly have discriminated against Plaintiff based upon his disability if they were not aware of the same until *after* he resigned), the materials submitted by Plaintiff do nothing more than support Rice and Johnson's affidavits. For example, the portions of the Student Handbook do not indicate these Defendants' involvement, and the letters submitted by Plaintiff purport to indicate the active role the other Defendants may have played in the disciplinary process, but fail to show any involvement by these Defendants.

■ As stated above, in order for liability to attach to Rice and Johnson for the alleged § 1983 violations, Plaintiff had to prove that they did more than play a passive role in the alleged violation or showed mere tacit approval of the events. *Leach*, 891 F.2d at 1246. Liability under this theory must be based upon more than a mere right to control employees and cannot be based upon

simple negligence. *Id.* Plaintiff must show that Rice and Johnson otherwise encouraged or condoned the actions of the other Defendants. *See Copeland v. Machulis,* 57 F.3d 476, 481 (6th Cir.1995). As such, where the materials submitted by Plaintiff in response to Rice and Johnson's motion for summary judgment failed to show, *in any respect,* that these two Defendants encouraged or condoned any alleged constitutional violations, the district court properly granted the motion for summary judgment. *Id.*

### III.

Plaintiff also argues that the district court erred in granting summary judgment on his procedural due process claim brought pursuant to § 1983 against all Defendants. We disagree.

Plaintiff argues that Defendants denied his constitutional right to procedural due process under the Fourteenth Amendment when they failed to give him notice of the specific charges against him. Plaintiff claims that the broad terms used by Defendant such as "misconduct," "unethical," and "unprofessional" did not afford him adequate notice under the Fourteenth Amendment.

■ The "root requirement" of due process is "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest." *Purisch v. Tennessee Tech. Univ.,* 76 F.3d 1414, 1423 (6th Cir.1996) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971)). "'The formality and procedural requisites for the hearing can vary, depending upon the importance of the interest involved and the nature of the subsequent proceedings.'" *Id.* (quoting *Boddie,* 401 U.S. at 379, 91 S.Ct. 780.).

■ Assuming that Plaintiff had a protected property interest in pursuing his education at the University, it was Plaintiff, not Defendants, who chose to terminate that property right. Defendants reprimanded Plaintiff by placing a letter in his personnel file; however, Defendants in no way expelled Plaintiff from the University. Plaintiff voluntarily gave up his property right. However, to the extent that one could argue that

Plaintiff may have been "constructively" expelled, we believe that Defendants more than afforded Plaintiff his procedural process rights.

Plaintiff knew that the misconduct for which he was accused consisted of his failure to follow the "last row" rule, and the corresponding classroom disruption. It was Plaintiff's own complaints regarding the "last row" rule and the professors' requests for Plaintiff to leave the classroom when he persisted in sitting in the last row that precipitated the Academic Status Committee meeting. Furthermore, the minutes from the March 1, 1995, meeting of the Academic Status Committee indicate that Plaintiff was given an opportunity to be heard, was fully aware of the charges against him, and was allowed to fully respond. (J.A. at 215–19.) Therefore, we conclude that Plaintiff was fully aware of the specific reasons for which he was ultimately reprimanded, and that his due process rights were not violated.

### IV.

Plaintiff's final argument is that the district court erred in granting qualified immunity to the Defendants in their individual capacities, where the Defendants violated Plaintiff's right to free speech. We disagree.

Plaintiff argues that the district court erred in granting qualified immunity to the Defendants named in their individual capacities on the basis that these Defendants did not violate his clearly established right to free speech. Plaintiff contends that he had a protected right to free speech under existing federal law that a reasonable person (particularly a reasonable person employed in the capacity of these Defendants) would have known about based upon the *Center Scope* Student Handbook which states: "It is the right and responsibility of the individual student or groups of students to be interested in and to question the polices, regulations, and procedures affecting them." (J.A. at 143.) Plaintiff therefore alleges that Defendants retaliated and disciplined him when he exercised his right to free speech.

■ Government officials who perform discretionary functions are entitled to quali-

fied immunity from civil damages suits arising out of the performance of their official duties unless they violate " 'clearly established constitutional rights of which a reasonable person would have known.' " *Purisch,* 76 F.3d at 1423 (quoting *Christophel v. Kukulinsky,* 61 F.3d 479, 484 (6th Cir.1995)). "The threshold inquiry in a qualified immunity analysis is whether a constitutional violation occurred at all." *Purisch,* 76 F.3d at 1423. In other words, only if it is found that a constitutional violation has occurred would the Court then examine whether the violation involved "clearly established constitutional rights of which a reasonable person would have known." *Id.*

 As noted by Defendants, it has been found that, "conduct by the student, in class or out of it, which for any reason—whether it stems from time, place, or type of behavior—materially disrupts classwork or involves substantial disorder or invasion of the rights of others is, of course, not immunized by the constitutional guarantee of freedom of speech." *Tinker v. Des Moines Indep. Community Sch. Dist.,* 393 U.S. 503, 513, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). As such, we find that, here, Plaintiff's claim fails at the inception where his alleged speech, i.e., his conduct of disrupting the classroom milieu for the sole purpose of advancing and pursuing his admitted "power struggle" with the University, was not protected activity. *Id.*

We cannot convey strongly enough that the purpose of this holding is not to discourage legitimate debate that is demonstrable or constitutes the vigorous expression of ideas in an academic setting, even when that expression may impose inconveniences. Indeed, the First Amendment right to freedom of expression of political, social, religious, and other such views may be most precious in an educational setting. However, as in the instant case, where the expression appears to have no intellectual content or even discernable purpose, and amounts to nothing more than expression of a personal proclivity designed to disrupt the educational process, such expression is not protected and does

violence to the spirit and purpose of the First Amendment. *Tinker,* 393 U.S. at 511, 89 S.Ct. 733. The rights afforded to students to freely express their ideas and views without fear of administrative reprisal, must be balanced against the compelling interest of the academicians to educate in an environment that is free of purposeless distractions and is conducive to teaching. Under the facts of this case, the balance clearly weighs in favor of the University.

Accordingly, Plaintiff's claim fails to present a constitutional violation because Plaintiff's conduct did not constitute protected speech. As such, the issue of qualified immunity need not be further explored, and it may be concluded that the district court properly granted Defendants' motion for summary judgment. *Purisch,* 76 F.3d at 1424.

## CONCLUSION

For the above stated reasons, we **AFFIRM** the district court's order granting summary judgment in favor of Defendants.[3]

---

3. Because we find that the district court properly dismissed Plaintiff's federal claims, we conclude that the court was correct in declining to review

Plaintiff's pendent state law claims. *See Musson Theatrical, Inc. v. Federal Express Corp.,* 89 F.3d 1244, 1254–55 (6th Cir.1996.)