**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0962n.06

Nos. 11-3639, 11-3713

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Aug 29, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| RAYCO MANUFACTURING, INC., | ) | |
| | ) | |
| Plaintiff - Appellant, | ) | |
| | ) | |
| and | ) | |
| | ) | ON APPEAL FROM THE |
| FECON, INC., | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| Plaintiff, | ) | DISTRICT OF OHIO |
| | ) | |
| v. | ) | |
| | ) | |
| DEUTZ CORPORATION; DEUTZ AG, | ) | |
| | ) | |
| Defendants - Appellees. | ) | |

**Before: SUTTON and GRIFFIN, Circuit Judges; and HOOD, District Judge.**[*]

PER CURIAM. Plaintiff-Appellant Rayco Manufacturing, Inc. ("Rayco") brought claims

in the Northern District of Ohio alleging that the engines manufactured by Defendant/Appellee Deutz

AG and sold by Defendant/Appellee Deutz Corporation (collectively "Deutz") for use in Rayco's

tree and landscaping equipment failed. Rayco sued Deutz for, *inter alia*, breach of contract, breach

of express and implied warranties, negligent misrepresentation and fraud. The district court granted

Deutz's motion for summary judgment on the claims relating to the majority of the engines, finding

---

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of
Kentucky, sitting by designation.

that Plaintiff could not, as a matter of law, show causation. The district court denied summary judgment as to the engines operated by two customers for which there was testimony that the engines were not being overloaded at the time of malfunction. Rayco's victory was short-lived, however, as the district court dismissed the remaining claims on the eve of trial because Rayco had not established any damages relating to these specific engines. This appeal followed. Deutz cross-appeals the district court's denial of its motion to transfer venue.

For the reasons that follow, we will affirm the district court's decisions.

## I.

Plaintiff Rayco, an Ohio corporation located in Wooster, Ohio, manufactures and sells specialized equipment for the landscape and forestry industries, including different types of tractor crawlers. Rayco has purchased diesel engines to power most of its equipment from Deutz for approximately 20 years. In 2001, Rayco produced a series of crawlers, referred to as its C85 crawlers, which was the predecessor to the machines that are the subject of this suit. Between 2001 and 2004 Rayco purchased 131 Deutz engines for use in the C85 crawlers, and no significant problems with the engines were reported.

In early 2004, Deutz began producing a new engine, the 87 hp BF4M2011 engine (hereinafter, the "2011 engine"), in order to meet federal EPA Tier 2 emission standards. Around the same time, Rayco replaced the C85 crawlers with another series of crawlers, referred to as its C87 crawlers, which were powered by the 2011 engines. Rayco contends that the C85 and C87 were substantially similar; however, the C87 crawler was modified to accommodate the 2011 Deutz engine.

2

The C87 crawler was a compact version of larger Rayco machines that look like a bulldozer but have a rotating drum attached to the front. The drum has "teeth" that mulch vegetation as the drum rotates at high speeds. One of the C87 crawler's applications was as a forestry mower. Forestry mowers are used for land clearing and commercial vegetation control and for cutting and mulching vegetation in difficult terrain. Rayco's literature regarding the C87 crawler's forestry mower application provided that the machine could be used to mulch trees 4-6 inches in diameter.

Rayco purchased 551 of the 2011 engines for use in the C87 crawlers. Of those, 468 of the 2011 engines complied with EPA's Tier 2 emission standards. In late 2004 and early 2005, Rayco received reports that a number of the 2011 Tier 2 compliant engines failed due to overheating. Between December 2004 through late 2008, approximately 117 of 468 (25%) of the 2011 Tier 2 compliant engines installed in C87 crawlers failed. Despite testing, Deutz could not determine the problem causing the engine failures. Deutz replaced many of the failed engines under warranty, often with the same 2011 Deutz engine. Unfortunately, some C87 crawler operators and owners also experienced multiple failures of the replacement engines.

Lacking a solution to the engine failures, Rayco eventually substituted engines from a different manufacturer, Yanmar, in the C87 crawler. The C87 crawlers powered by the Yanmar engine initially failed due to high oil temperatures, so Rayco made modifications to the engine compartment to accommodate the different engine. The Yanmar engine had lower maximum horsepower, but it is a larger displacement engine with 15% more torque than that of the 2011 Deutz engine.

The failed engines of the C87 crawlers exhibited melted pistons and scored cylinders caused by overheating. The debate between the parties centers on what caused engines to overheat and what

3

allowed them to continue operating once overheated. If properly designed, Rayco argues, the engines should not have overheated during use. Moreover, if they did overheat, which Deutz knew could happen, the engines were equipped with a temperature sensor/switch or thermal kill switch that was designed to shut down the engine if it overheated to prevent damage. The thermal kill switch did not shut the engine down in those that failed.

Rayco's expert, Dennis Guenther, Ph.D., identified a number of reasons that overheating could occur, including engine design and application issues, but was not able to determine the particular root cause of the engine failures. Dr. Guenther determined that the thermal kill switch's performance was "sporadic and frequently not at all within specifications." (Record No. 167, Guenther Report at 8). However, Dr. Guenther stopped short of attributing the engine failures to the thermal kill switch. Other possibilities for the engine failures include entrained air in oil, cooling capacity of the system, improperly located temperature sensor switches, undersized oil outlets, clogged external coolers and over-fueling. Dr. Guenther concluded that "[b]ased on research conducted to date, a specific root cause of the engine failures has not been determined. There are a number of candidates related to the design of the engine, and a number of candidates related to the application of the engine in the Rayco crawler." (Record No. 167, Guenther Report at 8).

By contrast, Deutz's expert, Robert Kuhn, concluded in his expert report that "[t]he damage seen to the subject engines is the result of drooping or lugging the engine for extended periods below its intended operating rpm. This operating condition was clearly understood and designed against by Rayco in the RG90 application of the 2011 engine." (Record No. 170, Attachment 24, Ex. 56, Kuhn Report at 14). Engine lugging is engine overloading, which causes the engines to operate at reduced engine speeds. This type of operation causes the engines to over-fuel and build up heat that

4

can damage an engine to the point of failure. Both experts agreed that the oil temperature sensor, or thermal kill switch, would not work if the engine was overloaded.

## II.

## A.

The Sixth Circuit reviews de novo a district court's grant of summary judgment. *Lockett v. Suardini*, 526 F.3d 866, 872 (6th Cir. 2008) (citing *Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006)). A grant of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden is met simply by showing the Court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. *Id.* at 325. The Court's function is not to weigh the evidence, but to decide whether there are genuine issues for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Multimedia 2000, Inc. v. Attard*, 374 F.3d 377, 380 (6th Cir. 2004).

## B.

The crux of the issue on appeal is whether Rayco presented sufficient evidence to show that the engine failures were caused by a design flaw in the 2011 engine.

Rayco cannot point to a specific defect causing overheating in the 2011 engine. Rayco correctly asserts that it may demonstrate the existence of a defect and causation by circumstantial evidence. However, "[w]here direct evidence is unavailable, a defect in a manufactured product existing at the time the product left the manufacturer may be proven by circumstantial evidence

where a preponderance of that evidence establishes that the loss was caused by a defect and not other possibilities, although not all other possibilities need be eliminated." *State Farm Fire & Cas. Co. v. Chrysler Corp.*, 523 N.E.2d 489, 493-94 (Ohio 1988) (superceded by statute on other grounds, R.C. § 2307.75, as recognized in *Perkins v. Wilkinson Sword, Inc., et al.*, 700 N.E.2d 1247 (Ohio 1998)). Before Rayco may rely on the circumstantial evidence it presents, "the plaintiff must at least present evidence to show why the defendant's product should not be among the possible causes to be eliminated." *Yanovich v. Zimmer Austin, Inc*., 255 F. App'x 957, 966 (6th Cir. 2007) (quoting *Indiana Ins. Co. v. Gen. Elec. Co.,* 326 F.Supp.2d 844, 856 (N.D.Ohio 2004)).

> That is, in order to rely on circumstantial evidence to prove the existence of a defect, [Rayco] must introduce other evidence that either (1) eliminates some of the other possible causes of the injury or (2) establishes that a defect-free product would not have performed the way the product at issue performed.

*Id.*

Rayco has failed to demonstrate sufficient evidence to allow this issue to be presented to the jury on circumstantial evidence alone. Rayco has not established that the engine design was defective or that failures were more likely to be caused by a defective engine design. Instead, the manner in which the C87 crawlers were being used, or a combination of the C87 crawlers' design and application error, appear to be the culprits. While Dr. Guenther opined that he did not think that all of the failures were caused by application error, he could not eliminate application error as a cause for the engine failures. Thus, even viewing the evidence in a light most favorable to Rayco, one cannot say that the design of the engine, as opposed to application error, is the cognizable cause of the engine failures.

Rayco and Dr. Guenther do not point to any other cause of the failure, only a number of possibilities, none more likely than another, and none of which are identified to have caused any

particular engine's failure. Possibilities are not sufficient to create material issues of fact sufficient to overcome summary judgment. Rayco has not demonstrated that a defect-free product would not have failed under the circumstances. As a matter of law, Rayco is unable to point to any cause for the failure for which Deutz would be liable. Consequently, we agree with the district court's reasoned opinion and will affirm the entry of summary judgment in favor of Deutz.

### III.

It is not clear from the district court record whether the district court judge was dismissing Rayco's remaining claims based on its powers to sanction parties or whether the district court was holding that, as a substantive matter, the claims failed because damages could not be shown. Regardless of the standard applied, however, the district court's decision on this matter was proper and shall be affirmed.

Deutz's motion for summary judgment was denied on Rayco's claims regarding the engines purchased by Rayco customers Aaron Taylor and Thomas Cole because there was testimony that those engines were not overloaded or lugged prior to their failures. Thus, the district court reasoned, a jury could find that application error was not the cause of the failures as to those individual engines.

The claims relating to Rayco customers Tom Cole and Aaron Taylor were set to go to trial on May 31, 2011. However, on May 26, 2011, Deutz moved to dismiss Rayco's remaining claims on ambiguous grounds. The motion, which did not cite a rule, was based on "lack of damages and/or failure by Rayco to provide discovery regarding damages." Essentially, Deutz's arguments were twofold – that Rayco should be sanctioned for failure to properly supplement its discovery and that,

as a matter of law, Rayco could not demonstrate that it was damaged by the failures of these two customers' engines. Rayco did not file a written response to Deutz's motion.

Deutz argues, at this level and before the district court, that Rayco did not have any damages relating to the claims for the remaining eight engines which were to go to trial and that it could not show damages relating to those specific engines. Following the district court's entry of summary judgment on the majority of the engines in issue, the district court explicitly limited the evidence on damages at trial to the specific engines belonging to Tom Cole and Aaron Taylor. Deutz's informal request for Rayco's calculated damages was ignored. As to actual damages, Deutz argues that Rayco did not have to pay for Tom Cole's requests for replacement engines - the first replacement engine was paid for by Deutz and the next three requests for replacement were denied due to improper engine maintenance. With respect to Aaron Taylor's requests for engine replacements, the first three engines were paid directly by Deutz and the fourth request was denied due to improper maintenance.

Thus, the only evidence of damages would be related to lost profits and goodwill, which must be established "with reasonable certainty." *Kinetico, Inc. v. Indep. Ohio Nail Co.*, 482 N.E.2d 1345, 1350-51 (Ohio Ct. App. 1984). These damages must be "substantiated by calculations based on facts available or in evidence." *Id.* at 1350 (quoting R. Dunn, Recovery of Damages for Lost Profits 2d (1981) 223, Section 5.4). The parties were given an opportunity to supplement their expert reports and other discovery, which originally addressed these damages for all of the engines. Rayco provided a supplemental report within the allotted time, but the expert declined to address individual damages for these customers' engines. Thus, while there was evidence in the record demonstrating Rayco's calculated damages for all of the engines for which claims had been made, there was no evidence pertaining to the specific engines at issue. Rayco contends that this information could be

8

extrapolated from the expert's report, but there was no evidence demonstrating the manner in which this would be calculated or the amount of damages claimed.

Following a hearing, the district court dismissed the claims relating to these customers first from the bench and, then, by written order. However, the district court failed, in both instances, to describe whether the dismissal was a sanction for failure to comply with discovery requests or if it was dismissing the claims on substantive grounds because Rayco could not sufficiently demonstrate damages regarding these claims.

To the extent the district court's decision is viewed as a substantive ruling, it was a summary judgment entered sua sponte. The substance of the summary judgment decision is reviewed de novo by this Court. The "district court's procedural decision to enter summary judgment sua sponte, however, is reviewed for abuse of discretion." *Shelby Cnty. Health Care Corp. v. Southern Council of Indus. Workers and Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000) (citing *Salehpour v. Univ. of Tenn.,* 159 F.3d 199, 203 (6th Cir. 1998)). This Court has previously "held that a district court may enter summary judgment sua sponte in certain limited circumstances, so long as the losing party was on notice that it had to come forward with all of its evidence." *Id*. (citing *Salehpour*, 159 F.3d at 203) (internal quotations omitted).

With respect to the district court's decision to dismiss the remaining claims sua sponte, it did so within a few days of the trial. Rayco was on notice that it was required to come forward with all of its evidence by that point. Looking to the substance of the argument in a light most favorable to Rayco, Rayco simply failed to provide any testimony or point to any expert reports detailing damages relating to these specific engines within days of trial. The record lacked any damages calculations

for these individual engines. Without damages relating to the specific engines at issue, Rayco would not have been able to prevail at trial, and dismissal was appropriate. Accordingly, Rayco had all the notice necessary and the district court did not abuse its discretion by finding that the specific evidence on damages was lacking and dismissing the claims sua sponte on summary judgment.

To the extent that the district court dismissed the remaining claims as an exercise of its powers to sanction under Fed. R. Civ. P. 37, the district court's decision is analyzed for an abuse of discretion. *Beil v. Lakewood Eng'g & Mfg. Co.*, 15 F.3d 546, 552 (6th Cir. 1994) (citing *Taylor v. Medtronics, Inc.,* 861 F.2d 980, 985 (6th Cir. 1988); *Reg'l Refuse Sys., Inc. v. Inland Reclamation Co.,* 842 F.2d150, 154 (6th Cir. 1988)) . "An abuse of discretion occurs when (1) the district court's decision is based on an erroneous conclusion of law, (2) the district court's findings are clearly erroneous, or (3) the district court's decision is clearly unreasonable, arbitrary or fanciful." *Beil*, 15 F.3d at 551 (citing *Badalamenti v. Dunham's, Inc.,* 896 F.2d 1359, 1362 (Fed. Cir. 1990)). Rayco was required to come forward with evidence relating to the specific engines at issue and failed to do so at great prejudice to Deutz. Thus, on the facts of this case, the district court alternatively did not abuse its discretion by dismissing Rayco's claims as a sanction.

IV.

For all of the  reasons stated above, we **AFFIRM** the district court's decisions. In view of our disposition, we dismiss Deutz's contingent cross-appeal as moot.