NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0216n.06
Filed: March 23, 2007

06-5520

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

BETTY CUNNINGHAM, LINDA JONES, )
ROSE MARY KELLER, and WILMA )
STANDAFER, on behalf of themselves )
and all others similarly situated, )
                                   )
        Plaintiffs-Appellees, )   ON APPEAL FROM THE UNITED
                                   )   STATES DISTRICT COURT FOR THE
v. )   EASTERN DISTRICT OF KENTUCKY
                                   )
OSRAM SYLVANIA, INC., )
                                   )
        Defendant-Appellee. )

Before: DAUGHTREY and COOK, Circuit Judges, and WEBER,[*] District Judge.

PER CURIAM. The plaintiffs in this putative class action suit appeal from the district court's order of dismissal, which was ostensibly based on Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim on which relief could be granted, in an action alleging violation of section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. Both the plaintiffs and the defendant, Osram Sylvania Products, Inc. (Sylvania), agreed below and continue to concede that the order of dismissal was more properly treated as a motion for summary judgment under Federal Rule of Civil Procedure 56, given that the

_____

[*]The Hon. Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation.

decision was based on "matters outside of the pleadings . . . presented to and not excluded by the [district] court." F.R.Civ.P. 12(c). The dispositive question on appeal has both procedural and substantive aspects: whether the complaint was properly subject to dismissal despite the district court's denial of the plaintiffs' motion to defer a response to the motion to dismiss pending "necessary discovery." The defendant argued below and contends on appeal that further discovery was *not* necessary – indeed, Sylvania suggested in briefing in the district court that the plaintiffs' interrogatories and their request for production of documents amounted to no more than a "fishing expedition," because all the documents necessary to a decision in the defendant's favor were contained in the record and because the plaintiffs had failed to repudiate any of them. The district court apparently agreed and dismissed the action with prejudice. Under the circumstances of this case, we conclude that dismissal prior to discovery was justified and affirm.

The plaintiffs are former Sylvania employees who retired in 1998 and 2002. They brought this action on the theory that Sylvania's announcement in 2003 that its contribution to their medical insurance premiums would henceforth be "capped" at scheduled amounts constituted a unilateral modification of non-modifiable lifetime benefits granted to retirees under union contracts between their union, UAW Local 1608, and Sylvania. The company's action came in the wake of provisions in collective bargaining agreements dating back to 1993, the year that Sylvania purchased the Kentucky facility where the plaintiffs were employed. After Sylvania took over the plant, the health insurance benefits for retirees fell into two categories, based on age and length of service. The first category

covered those employees who were under the age of 45 on the date of purchase and who were eligible to receive a percentage of the premium at company expense, based on their years of employment and capped at a certain amount set out in a separate schedule. Those over the age of 45 on the purchase date were subject to the same eligibility formulas, but the amounts to which they were entitled were not capped. As medical insurance costs began to rise precipitously in the decade following Sylvania's takeover of the plant, however, the company negotiated minor changes in the collective bargaining agreements with the UAW and, outside the contract, made certain other changes in the retirees' health insurance coverage. Finally, in 2003, after failing to secure a change in the most recent contract, the company notified retirees that the distinction between the capped and uncapped premiums had been removed from the plan and that, henceforth, all health insurance premiums would be subject to a cap on amounts paid by the company. In response, the plaintiffs brought suit, alleging that this unilateral change in benefits was in violation of the LMRA.

Although the complaint filed in the district court contained virtually all of the facts outlined above, and more, it omitted any facts to support the bald conclusions that "[t]he insurance benefits conferred on all retirees by the Agreements are lifetime benefits to which plaintiffs and other retirees from the Winchester, Kentucky plant are entitled for the remainder of their lives" and that those benefits "cannot be unilaterally modified or terminated by the defendant without the consent of the retirees." Because this proposition was pleaded without factual support of any kind, in our judgment the district court could

have entered an order of dismissal for failure to state a claim under Rule 12(b)(6). Instead, the court based its order on extrinsic materials submitted by the defendant in response to the allegation that the benefits in question were unmodifiable, lifetime entitlements.

Those materials consisted, first, of copies of the 1994-98 and 2001-03 contracts between Sylvania and the UAW that were in force when the plaintiffs retired. None of the provisions regarding medical insurance benefits for retirees included language that could be interpreted to vest those benefits for life. Second, the defendant produced written proposals put forward by the union during negotiations for both contracts that called for vested benefits, accompanied by an affidavit from a company negotiator who said that the defendant had rejected the proposals on both occasions and that the union had withdrawn them. Hence, instead of a guarantee, as proposed by the UAW, that "[a]ll current and future retirees will have their present health insurance continue for life and for the lives of their dependents with Osram [Sylvania] paying the full premium cost of such insurance," the contracts promise benefits as described only "during the term of th[e] Agreement."

In addition, the defendant produced the applications for retiree health insurance submitted and signed by each of the plaintiffs at the time of their retirement. Those forms contain a provision just above the signature lines that reads as follows: "I understand that . . . [r]ates and coverage are subject to change [and that] OSRAM SYLVANIA INC. plans to continue offering the Retiree Health Insurance Plan[;] however, it reserves the right to modify or terminate benefits." The same sort of disclaimer was also included in an annual

letter to retirees that explained changes in their benefits for the upcoming year, and in re-applications that the retirees submitted from time to time – for example, designating a new HMO.

The district court interpreted these provisions, taken collectively, as evidence of the absence of intent to vest the retiree health insurance benefits in the two contracts at issue and held that the subsequent unilateral capping of those benefits could not constitute a breach of the Sylvania-UAW 1994-1998 and 2001-2003 collective bargaining agreements. On appeal, the plaintiffs have striven mightily to demonstrate that the language in the contract should be interpreted to provide vested medical insurance benefits. We have studied each of the arguments put forward and find them too strained and unpersuasive to create a dispute of fact concerning the legal import of the agreements. Moreover, our examination of the nature of the discovery sought by the plaintiffs in the trial court convinces us that the defendant's description of the information requested as immaterial to a proper interpretation of the contracts is correct. We conclude that discovery would not have produced evidence sufficient to create a *material* dispute of fact in this case and that summary judgment was therefore properly entered in favor of the defendant.

Finally, we note what is perhaps the most conclusive factor in our determination: the failure of the plaintiffs to make any effort to refute the extrinsic evidence offered by the

defendant in support of its motion to dismiss.[1]  We concede the obvious, of course, which

is that a period of discovery prior to a ruling on a motion for summary judgment will be

appropriate in ordinary cases.  *See Vega v. First Federal Savings & Loan Ass'n of Detroit*,

622 F.2d 918, 926 (6th Cir. 1980).  But, while Rule 56(f) assumes that a request for

discovery in response to such a motion ordinarily will be granted, it does not require

deferral by a district court, especially where, in the words of the rule, it does *not* "appear

from the affidavits of a party opposing the motion that the party cannot for reasons stated

present by affidavit facts essential to justify the party's opposition."  Thus, Rule 56(f)

presupposes that affidavits will be filed by a non-moving party seeking discovery prior to

a ruling on a motion for summary judgment, as required by Rule 56(c), and we have held

that such affidavits should include a description of the information needed and an

affirmative demonstration of how the requested discovery will permit the non-moving party

to rebut the grounds alleged for summary judgment.  *See Abercrombie & Fitch Stores, Inc.*

*v. American Eagle Outfitters, Inc.*, 280 F.3d 619, 627 (6th Cir. 2002).

In this case, however, there were *no* affidavits submitted to justify the plaintiffs'

"motion to defer responding . . . until after completing necessary discovery."  This omission

is especially remarkable given the fact that one of the plaintiffs was a member of the

---

[1]As previously noted, because the motion included as attachments certain extrinsic evidence consisting of relevant documents and an affidavit from a Sylvania official who had participated in negotiations with the union, it was more properly designated a motion for summary judgment under Rule 56 than a motion to dismiss under Rule 12(b)(6).  The plaintiffs secured an extension of time to file their memorandum in response to the motion to dismiss but filed instead – on the last day of the extension – a "motion to defer responding to defendant's motion to dismiss until after completing necessary discovery."  That motion was not accompanied by affidavits of any kind but, instead, by a "declaration" from counsel for the plaintiffs.

union's bargaining committee during relevant time periods and could have spoken personally to the documents and affidavits submitted by the defendant to establish that the proposal to vest the health insurance benefits had been rejected by the company and withdrawn by the union. That kind of specific information is not contained in the "declaration" of plaintiffs' counsel that was attached to the motion in response in this case.

The record in this case reflects a technical error by the district court in failing to treat the motion to dismiss as a motion for summary judgment *explicitly*, based on the court's reliance on extrinsic evidence. The resulting order, although designated as a grant of the defendant's motion to dismiss under the standard appropriate for determination of a Rule 12(b)(6) motion, was the functional equivalent of a grant of summary judgment. Moreover, because both parties had conceded that a decision under Rule 56 was appropriate, the ruling was not a *sua sponte* order of summary judgment, and the cases cited by the plaintiffs requiring notice under Rule 56(c) ten days prior to the entry of a *sua sponte* order are, therefore, not applicable in this case.

Under the unique circumstances of this case, we conclude that dismissal of the complaint was appropriate for the substantive reasons cited by the district court, even if the procedural posture of the order of dismissal was technically incorrect. For this reason, we AFFIRM the judgment of the district court.