RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 09a0135p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

HOBERT TACKETT, et al.,

        *Plaintiffs-Appellants,*

    *v.*

M&G POLYMERS, USA, LLC, et al.,

        *Defendants-Appellees.*

Nos. 07-4515/4516

>

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 07-00126—Gregory L. Frost, District Judge.

Argued: January 22, 2009

Decided and Filed: April 3, 2009

Before: MARTIN and MOORE, Circuit Judges; GWIN, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Renate Klass, MARTENS, ICE, KLASS, LEGGHIO & ISRAEL, Royal Oak, Michigan, Robert E. Rickey, COOK, PORTUNE & LOGOTHETIS, Cincinnati, Ohio, for Appellants. Deborah Shannon Davidson, MORGAN, LEWIS & BOCKIUS, Chicago, Illinois, for Appellees. **ON BRIEF:** Renate Klass, Stuart M. Israel, MARTENS, ICE, KLASS, LEGGHIO & ISRAEL, Royal Oak, Michigan, Robert E. Rickey, David M. Cook, COOK, PORTUNE & LOGOTHETIS, Cincinnati, Ohio, for Appellants. Deborah Shannon Davidson, Philip A. Miscimarra, MORGAN, LEWIS & BOCKIUS, Chicago, Illinois, for Appellees.

---

[*] The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

———————————

**OPINION**

———————————

PER CURIAM.

The Plaintiffs United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO-CLC ("USW") and Hobert Tackett, Woodrow W. Piles, and Harland B. Conley ("Retiree Plaintiffs") separately appeal the district court's dismissal of their case under Federal Rule of Civil Procedure 12(b)(1) and (b)(6).

The Plaintiffs alleged that, under their collective bargaining agreement ("CBA"), the Defendant M&G Polymers, USA ("M&G") promised them vested health-care benefits. When Defendant M&G announced it would begin requiring retiree contributions to health-care costs, the Plaintiffs sued. In addition to suing M&G, the Plaintiffs also sued the M&G-sponsored health plans that Retiree Plaintiffs receive their benefits from: the M&G Comprehensive Medical Benefits Program for Employees and Their Dependents, the M&G Catastrophic Medical Plan, the M&G Medical Necessity Benefits Program of Hospital, Surgical, Medical, and Prescription Drug Benefits for Employees and Their Dependents, and the M&G Major Medical Benefits Plan (collectively, with Defendant M&G, "Defendants").

In resolving this appeal, we must decide two main issues: (1) whether, under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), a district court must find that a violation of a collective bargaining agreement has occurred before it can exercise jurisdiction; and (2) whether, under this Circuit's *Yard-Man* analysis, *UAW v. Yard-Man*, 716 F.3d 1476, 1479 (6th Cir. 1983), the Plaintiffs have sufficiently established a right to vested health-care benefits to survive a motion to dismiss under Rule 12(b)(6) by relying on CBA language promising a "full Company contribution" to these benefits.

Because we hold that (1) a violation is not a prerequisite to jurisdiction under § 301 and because (2) the Plaintiffs have sufficiently shown an intention to vest health-care benefits to survive a motion to dismiss, we **REVERSE** and **REMAND**.

## I. Standard of Review

We generally review a district court's ruling under Rule 12(b)(1) and 12(b)(6) *de novo*. *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003) (citations omitted); *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). Courts have, however, observed an exception to this *de novo* standard of review under Rule 12(b)(1). When Congress statutorily confers subject-matter jurisdiction, it can require that certain prerequisites be met before a federal district court can exercise jurisdiction. *See, e.g.*, 28 U.S.C. § 1332 (establishing jurisdiction over cases between "citizens of different States"). When Congress establishes a jurisdictional prerequisite, a district court may admit extrinsic evidence and resolve disputed facts to decide if the asserted claim satisfies the jurisdictional prerequisite. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006). If a district court considers and resolves facts in deciding a Rule 12(b)(1) motion, we review those findings for clear error. *Nichols*, 318 F.3d at 677. Aside from the resolution of jurisdictional prerequisites, a district court must generally confine its Rule 12(b)(1) or 12(b)(6) ruling to matters contained within the pleadings and accept all well-pleaded allegations as true. *Gentek Building Products, Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).

## II.  Background and Procedural Posture

Before their retirement, the Retiree Plaintiffs worked at the Point Pleasant Polyester Plant (the "Plant") in Apple Grove, West Virginia. At that location, Plaintiff USW, or its predecessor union, bargained on behalf of the Plant's employees. The Plant has changed ownership several times, and  M&G now owns the plant.

In December 2006, M&G announced that it would begin requiring retirees to contribute to the cost of their health-care benefits.  After Defendant M&G's announcement, Retiree Plaintiffs, as putative class representatives, and USW sued under

§ 301 of the LMRA and under the Employee Retirement Income Security Act ("ERISA") §§ 502(a)(3) and 502 (a)(1)(B), 29 U.S.C. § 1132. Following the district court's dismissal, the Plaintiffs appealed separately, with USW challenging the district court's ruling on § 301 and the Retiree Plaintiffs challenging the ruling on both § 301 and ERISA §§ 502(a)(3) and 502(a)(1)(B). The appeals were consolidated for submission to this Court.

In their Complaint, the Plaintiffs pointed to language in the November 6, 2000 CBA between M&G and USW that governed retirees' entitlement to health-care benefits:

> Employees who retire on or after January 1, 1996 and who are eligible for and receiving a monthly pension under the 1993 Pension Plan . . . whose full years of attained age and full years of attained continuous service . . . at the time of retirement equals 95 or more points *will receive a full Company contribution towards the cost of [health-care] benefits.* . . . Employees who have less than 95 points at the time of retirement will receive a reduced Company contribution. The Company contribution will be reduced by 2% for every point less than 95. Employees will be required to pay the balance of the health care contribution, as estimated by the Company annually in advance, for the [health care] benefits . . . . Failure to pay the required medical contribution will result in cancellation of coverage.

(emphasis added). According to the Plaintiffs, this "full Company contribution" language shows a vested right to health-care benefits: those employees meeting the age and term-of-service qualifications are entitled to fully-covered health care benefits and those falling below these qualifications would receive reductions from full coverage as set out in the plan. The Retiree Plaintiffs also sought to represent surviving spouses whose benefits were affected by Defendants' alleged breach. The Plaintiffs said that the Defendants unilaterally set the "contribution" at a level below full coverage violating the above-quoted language.

The Defendants moved to dismiss the Complaint under Rule 12(b)(1) and 12(b)(6). The Defendants argued that, § 301, which confers subject-matter jurisdiction in federal district courts in "[s]uits for violation of contracts," 29 U.S.C. § 185(a), required that a plaintiff show a "violation" before a district court could exercise subject-

matter jurisdiction.  In the alternative, the Defendants moved to dismiss saying that the language quoted by the Plaintiffs did not establish a vested right to health-care benefits.

In moving to dismiss, the Defendants submitted evidence of several side letter agreements.  Defendants said that these side letters were incorporated by reference into the CBA that the Plaintiffs sued under and that the side letters cap the amount of the employer's contribution to the cost of health-care benefits.  Responding, the Plaintiffs said that these side cap letters were not part of the collective bargaining agreement that the Plaintiffs sued under.  Resolution of this disputed issue, however, required consideration of materials extrinsic to the pleadings.[1]  The Defendants said that the district court could consider this extrinsic material under Rule 12(b)(1) because the court found a lack of a violation, which was a jurisdictional prerequisite.

The district court agreed with the Defendants and held that the showing of a collective bargaining agreement violation was a prerequisite to jurisdiction: "Absent a breach by Defendants, this Court lacks jurisdiction over the § 301 claim."  *Tackett v. M&G Polymers USA, LLC.*, 523 F. Supp. 2d 684, 691 (S.D. Ohio 2007).  The court then admitted and weighed the extrinsic evidence on the side letters to decide whether M&G breached the collective bargaining agreement.[2]  *Id.* at 690. Ultimately, the district court concluded that the Defendants did not breach the CBA, and that it lacked jurisdiction.

---

[1]In support of the contention that the side letters were incorporated into the CBA, the Defendants submitted evidence of the collective bargaining history at the Plant dating back to 1991.  A series of collective bargaining agreements has been in force at the Plant, with each typically lasting around three years before renegotiation.  The first letter agreement, signed contemporaneously with the 1991 - 1994 collective bargaining agreement, was adopted "for purposes of conforming with the new Financial Accounting Standard Board (FASB) accounting requirement" that required accrual accounting of health-care benefits.  This new requirement hurt a company's balance sheet performance if the company had no cap on its health-care costs. While signed in 1991, the caps were not to take effect until July 1, 1997. Concurrent with the 1994 - 1997 collective bargaining agreement, another cap letter postponed the effective date of the caps to 2004.  The import of this perpetual postponement and the applicability of these cap letters to the current parties are fact issues that must be resolved by the district court outside of the Rule 12(b)(1) determination.

[2]For example, the Plaintiffs submitted to the district court a letter written by David Dick, an attorney who represented M&G in labor negotiations in 2000.  The letter said that the applicability of one of the cap letters to "M&G is less than clear.  In fact, the Company believes it does not apply to M&G." During this litigation, however, Dick submitted a declaration saying he "was not familiar with details or history concerning any side letters."  In resolving the Defendants' Rule 12(b)(1) motion, the district court accepted Dick's characterization of the letter and found that this letter "was the result of a lack of understanding on [Dick's] part of the history of cap incorporation." *Tackett*, 523 F. Supp. 2d at 690.

As an alternative to its dismissal for lack of jurisdiction, the district court then assumed for argument purposes that it had jurisdiction over the Plaintiffs' claims for relief and addressed the Defendants' 12(b)(6) motion to dismiss. Because the LRMA § 301 and the ERISA § 502(a)(1)(B) claims both turned on whether the Plaintiffs' benefits were vested, the district court considered these claims together and held that the "full Company contribution" language did not plausibly state a claim for vested health-care benefits.

The district court additionally granted the Defendants' 12(b)(6) motion directed at the Plaintiffs' ERISA fiduciary claim, holding that Plaintiffs "failed to plead facts" supporting this claim. *Id.* at 696.

### III. Rule 12(b)

*III.A.   Rule 12(b)(1)*

Our review of the district court's dismissal under Rule 12(b)(1) turns on whether a plaintiff must establish the breach of a collective bargaining agreement as a prerequisite to jurisdiction under § 301 of the LMRA.[3] The LMRA confers subject-matter jurisdiction in federal district courts in "[s]uits for violation of contracts." 29 U.S.C. § 185(a).[4] Whether the language in a statute like § 301 is a jurisdictional prerequisite or merely an "'essential ingredient[] of a federal claim for relief'" is sometimes a "'close question.'" *Arbaugh*, 546 U.S. at 503, 516 (quoting *Da Silva v. Kinsho Intern Corp.*, 229 F.3d 358, 361 (2nd Cir. 2000)).

---

[3]The Plaintiffs also claimed that the district court had federal-question subject-matter jurisdiction under 28 U.S.C. § 1331. Here, the district court dismissed the claim because it failed to meet the requirements of § 301. We, however, ultimately conclude that the court had jurisdiction under § 301. Accordingly, we need not address whether 28 U.S.C. § 1331 could support jurisdiction over the Plaintiffs' claims if the claims had failed to meet a jurisdictional requirement of § 301.

[4]In full,§ 301 says,

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

If a violation is not a prerequisite to jurisdiction, then, to survive a Rule 12(b)(1) motion, the Plaintiffs need not show a violation but merely that their violation claim is "colorable." *Id.* at 513 (citing *Bell v. Hood*, 327 U.S. 678, 681-85 (1946)). Additionally, if a violation is not a prerequisite to jurisdiction, the district court erred in admitting and weighing evidence extrinsic to the pleadings in resolving the Rule 12(b)(1) motion.

### *III.A.1.        The Distinction between a Jurisdictional Prerequisite and an Essential Ingredient of a Federal Claim to Relief*

In finding that it did not have jurisdiction over Plaintiffs breach of contract claim, the district court relied upon *Bauer v. RBX Industries, Inc.*, 368 F.3d 569 (6th Cir. 2004). Giving *Bauer* an exceedingly broad reading, the district court held that plaintiffs in a § 301 action must demonstrate a contractual violation to establish jurisdiction. *Tackett*, 523 F. Supp. 2d at 691-92. The district court's interpretation of *Bauer* was over-broad. More importantly, the Supreme Court and this Court have both subsequently rejected the district court's requirement.

After the *Bauer* decision, the Supreme Court clarified the distinction between a jurisdictional prerequisite and an essential ingredient of a federal claim to relief and provided a test that courts must use to determine what showing is required to establish jurisdiction and what showing is required to establish the merits of their claims. In *Arbaugh*, the plaintiff sued for alleged violations of Title VII. *Id.* at 503-04. Title VII says that "[e]ach . . . United States district court . . . shall have jurisdiction of actions brought under this subchapter." *Id.* at 505-06 (citing 42 U.S.C. § 2000e-5(f)(3)). Title VII "makes it unlawful 'for an employer . . . to discriminate,' . . . on the basis of sex." *Id.* at 503 (citing 42 U.S.C. § 2000e-2(a)(1)). Separately, Title VII defines "employer" to only include those employers with "fifteen or more employees." *Id.* at 504 (citing 42 U.S.C. § 2000e(b)). The central issue in *Arbaugh* was whether this statutory "employee-numerosity requirement" was a "jurisdictional" prerequisite, or merely an "essential ingredient[]" of the plaintiff's claim. *Arbaugh*, 546 U.S. at 513.

In resolving this central issue, the *Arbaugh* Court first criticized the frequent sloppiness in courts' treatment of motions to dismiss, noting that courts too often

"conflated" Rule 12(b)(6) merits motions with Rule 12(b)(1) jurisdictional motions. *Id.* at 511. To remedy this, the Supreme Court established a bright line rule:

> If the Legislature *clearly states* that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. . . . But *when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as non-jurisdictional in character*.

*Id.* at 515-16 (citations omitted) (emphasis added).

In determining whether Congress intended courts to treat the employee-numerosity requirement as jurisdictional, the Supreme Court noted that Title VII gave no indication that a district court should raise and resolve the employee-numerosity requirement on its own. *Id.* at 514.

In concluding that Congress did not intend to rank the employee-numerosity requirement as jurisdictional, the Court identified two additional practical considerations that supported its holding: the discretion that district courts enjoy when their fact-finding overlaps with the merits of the claims and judicial efficiency. *Id.* A district court can resolve disputed facts that underlie a jurisdictional prerequisite in a 12(b)(1) motion, but when the prerequisite is intertwined with the merits, this fact-finding undercuts the jury's role as the "proper trier of contested facts." *Id.* Additionally, because subject-matter jurisdiction defects can be raised at any stage of litigation, and because a lack of subject-matter jurisdiction requires dismissal of pendent state-law claims, a district court may be required to dismiss state claims after expending considerable judicial resources. *Id.*

### III.A.2.     *Application of* Arbaugh *in the Sixth Circuit*

After oral argument in this case, this Court reexamined *Bauer* and its § 301 jurisprudence in light of the *Arbaugh* decision. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1004-07 (6th Cir. 2009). In *Winnett*, this Court overruled the *Bauer* decision and held that "the existence of a union contract is an element of Plaintiffs' merits claim, not a limit on federal subject-matter jurisdiction." *Id.* at 1007.

In reaching this decision, the *Winnett* Court started with an examination of Congressional intent. *Id.* at 1005-06 ("*Arbaugh* now tells us to ask: Did Congress 'clearly state[],' 546 U.S. at 515, that the existence of a union contract is a jurisdictional prerequisite for a Section 301(a) claim?"). In determining whether Congress intended a contract to be a jurisdictional prerequisite, the Court noted that the only reference to jurisdiction in § 301 was to personal jurisdiction and in that reference the statute had not "impose[d] new barriers" to federal courts, but had "ease[d] access." *Id.* at 1006. Additionally, § 301 includes all of the prima facie elements of the cause of action in the jurisdiction-conferring provision. The Court reasoned that, if a contract is a jurisdictional prerequisite, then likely each other prima facie requirement in § 301 functions as a jurisdictional prerequisite. The *Winnett* Court was "reluctant to conclude that Congress intended to create a cause of action that has no non-jurisdictional elements." *Id.*

After finding no indication that Congress "clearly state[d]" that courts should treat a contract as jurisdictional, the Court went on to address the "real-world considerations" associated with treating a contract as jurisdictional. *Id.* This additional analysis after examining Congressional intent was drawn from the *Arbaugh* decision: "*Arbaugh* also tells us not to just look at labels but also pragmatically to consider the consequences of giving a jurisdictional label to an element of a cause of action." *Id.* The *Winnett* Court then pointed out that, when a district court finds a jurisdictional defect, the court must dismiss even meritorious pendent state-law claims, despite the time and resources the court and parties have expended on the case. *Id.* at 1007 (noting the "wasteful inefficiencies on the parties or the courts").

As directed by the Supreme Court in *Arbaugh* and the *Winnett* Court, we conclude that Congress did not "clearly state[]" an intent to treat the violation language as jurisdictional. *See id.* at 1005-06. Additionally, after examining the "real-world considerations" of labeling the violation language as jurisdictional, we find the district court's interpretation would wreak havoc. *See id.* at 1006.

The *Winnett* Court has already determined that Congress did not intend the "contract" language in § 301 as jurisdictional. We agree and hold that Congress did not "clearly state[]" that courts should treat the violation language as jurisdictional for the same reasons identified by the *Winnett* Court. The language of § 301 suggests that a violation is not a prerequisite to jurisdiction: "Suits *for violation* of contracts . . . may be brought in any district court of the United States having jurisdiction of the parties . . . ." 29 U.S.C. § 185(a) (emphasis added.) If we were to consider a violation a jurisdictional prerequisite, Congress would be requiring a district court to determine whether a violation had occurred before it could decide at the merits stage whether a violation had occurred. This cannot be the result intended by Congress with the use of the violation language.

This conclusion is bolstered here, even more so than in *Winnett*, by the "real-world considerations" associated with labeling a violation as a jurisdictional prerequisite. *Winnett*, 533 F.3d at 1006. First, the LMRA gives the district court jurisdiction over "[s]uits *for* violation of contracts." Section 301 does not limit jurisdiction to "suits where a violation of contract has been established." The district court will consider the same set of underlying facts when deciding if there was a violation to support jurisdiction and when deciding if the Plaintiffs should ultimately succeed on the merits of their claim. Any merits-related fact-finding by a district court during a jurisdictional determination undercuts the jury's traditional role as "the proper trier of contested facts." *See Arbaugh*, 545 U.S. at 514 (citations omitted).

Second, as both *Winnett* and *Arbaugh* noted, "when a court lacks subject matter jurisdiction over a claim, it must immediately dismiss not just that claim but any pendent state-law claims as well–no matter how late in the case the district or appellate court identifies the jurisdictional defect." *Winnett*, 553 F.3d at 1007 (citing *Arbaugh*, 546 U.S. at 514). For example, a case may go all the way to a jury trial on a § 301 claim and pendent state-law claims. If the jury finds that the state-law claims are meritorious but also that a plaintiff did not establish a violation of a labor contract, the court would be required to dismiss these meritorious state-law claims after expending considerable

judicial resources on their adjudication.  This required dismissal may "impose . . . wasteful inefficiencies on the parties or the courts."  *Id.*

These inefficiencies become exacerbated in the context of a § 301 action.  In *Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 502 (1962), the Supreme Court addressed concurrent federal and state court jurisdiction over claims for a violation of a collective bargaining agreement.  The Court held that state courts have concurrent jurisdiction over § 301 claims.  *Id.* at 521-22 ("We agree with the Supreme Judicial Court of Massachusetts that the courts of that Commonwealth had jurisdiction in this case, and we accordingly affirm the judgment before us."); *see also*, *Valinski v. Detroit Edison*, 197 Fed. Appx. 403, 407 (6th Cir. 2006) ("State courts have concurrent jurisdiction over § 301 claims, but must of course apply federal law.").  If Plaintiffs' claim for breach of contract  is dismissed for lack of jurisdiction, res judicata does not prevent re-litigation of the breach of contract claim in a state court with plenary jurisdiction.  See 18A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 4436 ("The basic rule that dismissal for lack of subject-matter jurisdiction does not preclude a second action on the same claim is well settled.").

Accordingly, we hold that the district court erred in dismissing the Plaintiffs' claims for lack of subject-matter jurisdiction.[5]

*III.B.   Rule 12(b)(6)*

After dismissing the Plaintiffs' LMRA claim for lack of jurisdiction, the district court then assumed that it had jurisdiction and dismissed the Plaintiffs' complaint for failure to state a claim.  We now address the district court's grant of the Defendants' 12(b)(6) motion.  The district court "decline[d] to consider material extrinsic to the pleadings in regard to the motion to dismiss," and therefore did not convert the 12(b)(6)

---

[5]The Defendants ask this Court to affirm the district court's holding under Rule 12(b)(1) because the Plaintiffs have failed to present a colorable claim.  We need not address this argument because below we conclude that the Plaintiffs have sufficiently stated a claim under the more rigorous Rule 12(b)(6) standard.

motion into a motion for summary judgment. *Tackett*, 523 F. Supp. 2d at 693.**6** The Defendants say that we should affirm that district court's 12(b)(6) ruling, or, alternatively, convert this into a Rule 56 motion and consider materials outside the pleadings. The Defendants say that conversion is appropriate because both parties submitted, and the district court considered, extrinsic materials in the Rule 12(b)(1) analysis.

Under our 12(b)(1) analysis above, we did not consider matters outside the pleadings. Rule 12(b)(6), besides some minor exceptions, does not permit courts to consider evidence extrinsic to the pleadings. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2509 (2007) (citing 5B WRIGHT & MILLER § 1357). If, however, as the Defendants urge, we convert the 12(b)(6) motion into a Rule 56 motion, we would need to examine all of the extrinsic materials the parties submitted. Accordingly, we will first address whether such an examination is necessary, and decide if the Defendants' Rule 12(b)(6) motion should be converted into a Rule 56 motion on appeal.

### III.B.1.        *Rule 12(d) Conversion*

When a court considers matters outside the pleadings in a Rule 12(b)(6) motion, Rule 12(d) requires that "the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). A district court may convert the motion *sua sponte*. This conversion, however, "should be exercised with great caution and attention to the parties' procedural rights." 5C WRIGHT & MILLER § 1366.

In the Sixth Circuit, before a district court may convert the motion *sua sponte*, the "district court must afford the party against whom *sua sponte* summary judgment is to be entered ten-days notice and an adequate opportunity to respond." *Yashon v. Gregory*, 737 F.2d 547, 552 (6th Cir. 1984). Despite this "clearly established rule," an appeals court will reverse for failure to notify only if the losing party can "demonstrate prejudice." *Id.*; *Harrington v. Vandalia-Butler Bd. of Educ.*, 649 F.2d 434, 436 (6th Cir.

---

**6**The district court noted the "unusual" procedural posture of the case, which allowed the court to consider the Letter Agreements in a 12(b)(1) motion, but not in the 12(b)(6) motion. *Tackett*, 523 F. Supp. 2d at 692.

1981) ("A District Court's failure to comply with the ten-day requirement of Rule 56(c) is subject to the harmless error rule.").

*Yashon* states that the notice requirement is flexible and that a failure to give notice will result in reversal only if there was sufficient prejudice to the non-moving party. *See* 5C WRIGHT & MILLER § 1366 ("[T]he absence of formal notice will be excused when it is harmless or when the parties were otherwise apprised of the conversion . . . and, in fact, had a sufficient opportunity to present the materials relevant to a summary judgment motion.").

In asking this court to convert the 12(b)(6) motion *sua sponte*, the Defendants point to *Cunningham v. Osram Sylvania, Inc.*, 221 Fed. Appx. 420, 423 (6th Cir. 2007), an unreported Sixth Circuit opinion where the district court granted the defendant's 12(b)(6) motion to dismiss, but considered materials extrinsic to the pleadings. On appeal, the parties conceded that, although the district court decided the motion under Rule 12(b)(6), "a decision under Rule 56 was appropriate." *Id.* This Court did not reverse because the district court committed a "technical error" and merely mislabeled its analysis: the district court's decision was the "functional equivalent" of a Rule 56 determination. *Id.*

*Cunningham* involved the review of a district court opinion that was the "functional equivalent" of a ruling under Rule 56. The merits analysis presented here under Rule 12(b)(1), however, was not at all the functional equivalent of a Rule 56 determination. Here, the district court weighed and resolved the claim without viewing "the facts, and all inferences to be drawn from them, in the light most favorable to the nonmoving party." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Additionally, the district court made no conclusions regarding whether the claim presented any "genuine issue as to any material fact." FED. R. CIV. P. 56(c).

Because the district court's ruling was not the functional equivalent of a Rule 56 ruling, we decline the Defendants' invitation to base our ruling on Rule 56. Therefore,

we will not consider matters extrinsic to the pleadings and we will proceed to review the district court's Rule 12(b)(6) analysis.

### III.B.2.        *Rule 12(b)(6) Standard*

In deciding a Rule 12(b)(6) motion, a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted). But the district court need not accept a "bare assertion of legal conclusions." *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir.1995).

In *Bell Atlantic Corp.  v. Twombly*, 550 U.S. 554, 127 S.Ct. 1955, 1974, 1965 (2007), the Supreme Court said that, when viewing the complaint under the above standards, to survive a motion to dismiss a complaint must contain (1) "enough facts to state a claim to relief that is plausible," (2) more than "a formulaic recitation of a cause of action's elements," and (3) allegations that suggest a "right to relief above a speculative level."

Just weeks after the *Twombly* decision, however, the Supreme Court cited *Twombly* to reaffirm the liberal pleading standard in Rule 8(a)(2): "Rule . . . 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007) (quoting *Twombly*, 127 S. Ct. at 1964). On several occasions, the Sixth Circuit has identified "uncertainty regarding the scope of *Twombly*," and noted that *Twombly* may be "limited to expensive, complicated litigation." *Gunasekera*, 551 F.3d at 466. In reviewing a motion to dismiss, "[w]e read *Twombly* and *Erickson* in conjunction with one another." *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295-96 (6th Cir. 2008).

We will now address whether the Plaintiffs have sufficiently pleaded their LMRA and ERISA claims to survive a Rule 12(b)(6) motion.

*III.B.2.a.*     *Section 301 Pleading Sufficiency*

The parties dispute whether the Plaintiffs have plausibly alleged a violation of the CBA. The Plaintiffs allege that Defendants unilaterally modified the Plaintiffs' vested health-care benefits. Health-care benefits vest only if the parties so intend. *Noe v. Polyone Corp.*, 520 F.3d 548, 552 (6th Cir. 2008). If the parties do not intend to vest the benefits, the former employer can modify the retiree benefits without breaching a collective bargaining agreement.

In determining whether the parties intended  health care benefits to vest, this Court applies the principles first described in *UAW v. Yard-Man*, 716 F.3d 1476, 1479 (6th Cir. 1983). In *Yard-Man*, we held that, when interpreting a collective bargaining agreement, a court must start with the "explicit language." *Id.* General principles of contract interpretation should guide a district court's interpretation of the explicit language.[7] "When a contractual provision is ambiguous, the court may turn to extrinsic evidence." *UAW v. BVR Liquidating, Inc.*, 190 F.3d 768, 774 (6th Cir. 1999). Language in a collective bargaining agreement that "equate[es] eligibility for retiree health benefits with eligibility for a pension" suggests an intent to vest. *McCoy v. Meridian Auto. Sys., Inc.*, 390 F.3d 417, 421 (6th Cir. 2004) (citing *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648 (6th Cir. 1996)).

Courts reviewing a collective bargaining agreement must also keep in mind the context of labor-management negotiations on retiree health-care benefits: "because retirement health care benefits are not mandatory or required to be included in an agreement, and because they are 'typically understood as a form of delayed compensation or reward for past services' it is unlikely that they would be 'left to the contingencies of future negotiations.'" *Yolton v. El Paso Tenn. Pipeline Co.*, 435 F.3d 571, 580 (6th Cir. 2006) (quoting *Yard-Man*, 716 F.2d at 1481-82).

---

[7]In interpreting a CBA, courts must (1) "look to the explicit language," (2) evaluate that language "in light of the context" that led to its use, (3) "interpret each provision . . . as part of the integrated whole," (4) construe each provision "consistently with the entire document and the relative positions and purposes of the parties," (5) construe the terms "so as to render none nugatory" and to "avoid illusory promises," (6) look to other words and phrases in the document to resolve ambiguities, and (7) "review the interpretation . . . for consistency with federal labor policy." *Yard-Man*, 716 F.2d at 1479-80.

Here, the Plaintiffs have pointed to language in the collective bargaining agreement sufficient to survive a 12(b)(6) motion. In their Complaint, the Plaintiffs pointed to language in the November 6, 2000 CBA between M&G and the USW:

> Employees who retire on or after January 1, 1996 and who are eligible for and receiving a monthly pension under the 1993 Pension Plan . . . whose full years of attained age and full years of attained continuous service . . . at the time of retirement equals 95 or more points *will receive a full Company contribution towards the cost of [health-care] benefits*. . . . Employees who have less than 95 points at the time of retirement will receive a reduced Company contribution. The Company contribution will be reduced by 2% for every point less than 95. Employees will be required to pay the balance of the health care contribution, as estimated by the Company annually in advance, for the [health-care] benefits . . . . Failure to pay the required medical contribution will result in cancellation of coverage.

(emphasis added).

The district court held that the "full Company contribution" language meant "that qualifying retirees will receive the total amount of the company's *potential* contribution toward the cost of health benefits." *Tackett*, 523 F. Supp. 2d at 695. The district court found that the language, "[e]mployees will be required to pay the balance of the health care contribution," supported its reading. *Id.* at 696.

We disagree with the district court's reading of the relevant portions of the CBA. First, the "full Company contribution" language suggests that the parties intended the employer to cover the full cost of health-care benefits for those employees meeting the age and term-of-service requirements. Keeping in mind the context of the labor-management negotiations identified in *Yard-Man*, we find it unlikely that Plaintiff USW would agree to language that ensures its members a "full Company contribution," if the company could unilaterally change the level of contribution. The CBA has no limitation on the amount of a company contribution and if the Defendants' argument were accepted, the company presumably could lower the contribution to zero without violating this language. Such a promise would be illusory.

Second, the limiting language, "[e]mployees will be required to pay the balance of the health care contribution," follows the provision requiring contributions by those retirees who had not attained the requisite seniority points. From the placement of this language, we can reasonably infer that it did not apply to all retirees, but only to those retirees who had not attained the requisite seniority points.

Third, the collective bargaining agreement tied eligibility for health-care benefits to pension benefits. This is another factor indicating that the parties intended the health care benefits to vest upon retirement.

We hold that the Plaintiffs' Complaint presented a plausible claim that the parties intended to vest health-care benefits. Accordingly, we hold that the district court erred in granting the Defendants' Rule 12(b)(6) motion on the § 301 claim.

### III.B.2.b.          *Sufficiency of Pleadings for ERISA § 502(a)(1)(B) Violation of Employee Welfare Benefit Plan Claim*

ERISA § 502(a)(1)(B) allows a plan "participant or beneficiary" to bring a civil action to "recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132.

As noted above in the discussion of § 301, health-care benefits, as opposed to pension benefits, do not mandatorily vest. *Sprague v. Gen. Motors*, 133 F.3d 388, 400 (6th Cir. 1998) (en banc). Employers, therefore, "are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Id.* (quoting *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995)). But employers may vest health care benefits if they choose to do so. *Id.* at 400. When the plan document at issue is a collective bargaining agreement, the interpretative principles outlined in *Yard-Man* govern a court's determination of the parties' intent to vest health-care benefits. *Maurer v. Joy Techs., Inc.*, 212 F.3d 907, 917 (6th Cir. 2000) (noting the

continued application of *Yard-Man* to ERISA cases involving a collective bargaining agreement).[8]

The determination above that the parties intended health-care benefits to vest carries over to the ERISA § 502(a)(1)(B) claim. The Plaintiffs have therefore presented a plausible claim under ERISA § 502(a)(1)(B).

> ### III.B.2.c.        Sufficiency of Pleadings under ERISA 502(a)(3) Claim for Violation of Fiduciary Duties and Violation of Benefit Plan

ERISA § 502(a)(3) allows a plan "participant, beneficiary, or fiduciary" to bring a civil action:

> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3). Section 502(a)(3) is a "catchall" for ERISA violations, *Varity Corp v. Howe*, 516 U.S. 489, 511 (1996), that allows courts to provide "appropriate" equitable relief. 29 U.S.C. § 1132(a)(3). But § 502(a)(3) is not an appropriate means to relief when a plaintiff merely "repackage[s]" a § 502(a)(1)(B) claim: "Where Congress has elsewhere provided means to adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case [§ 502(a)(3)] relief normally would not be appropriate." *Varity*, 516 U.S. at 515. In *Varity*, the Supreme Court allowed a plaintiff's fiduciary claims based on alleged employer misrepresentations to go forward when the plaintiff lacked a remedy under § 502(a)(1)(B). *Id.*

Although the *Varity* Court, in allowing the § 502(a)(3) claim, emphasized that the plaintiff could not have brought a § 502(a)(1)(B) claim, the Sixth Circuit sometimes

---

[8]Defendant M&G points us to language in *Sprague* that it argues limits *Yard-Man's* application: "Because vesting of welfare plan benefits is not required by law, an employer's commitment to vest such benefits is not to be inferred lightly." *Sprague*, 133 F.3d at 400. Although the Defendant seems to contend that *Sprague* tacitly overruled the principles defined in *Yard-Man*, this Court has already rejected that argument. See *Maurer*, 212 F.3d at 917.

allows a plaintiff to bring claims under both §§ 502(a)(3) and 502(a)(1)(B). *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 718 (6th Cir. 2005). The *Hill* Court allowed a plaintiff to bring claims under both sections when § 502(a)(1)(B) would not provide the complete relief the plaintiff sought. There the plaintiff complained of an "improper methodology for handling all of the . . . claims." *Hill*, 409 F.3d at 718. The Court held that the plaintiff had pleaded sufficient facts to support a § 502(a)(1)(B) for unpaid benefits.

But the plaintiff in *Hill* also brought a claim for injunctive relief under § 502(a)(3) to require the defendant "to alter the manner in which it administers all of the . . . claims." *Id.* The Court noted that this § 502(a)(3) claim was for "plan-wide injunctive relief, not [for] individual-benefit payments." *Id.* Although the plaintiff had the ability to seek damages for improperly denied benefits, the Court allowed the plaintiff to proceed on both claims because "[o]nly injunctive relief of the type available under § [502(a)(3)] will provide the complete relief sought." *Id.*

Relevant to a § 502(a)(3) claim, the Retiree Plaintiffs sought an injunction to prevent Defendant M&G from terminating their vested benefits in the future. Additionally, the Retiree Plaintiffs sought equitable relief to return them to their position before the Defendants' breach.[9] In appealing the district court's dismissal of their § 502(a)(3) claim, the Retiree Plaintiffs note that they claim "allegations of plan-wide breaches of fiduciary duty."

---

[9]In their Complaint, Plaintiffs said:

> Plaintiffs request that this Court[ a]ward Class Members retiree health care benefits, pursuant to the terms of the applicable collective bargaining agreements and the Plans, and such monetary damages and/or equitable relief as necessary to restore Class Members to the positions in which they would have been and should be but for defendants' contractual and statutory violations and wrongful conduct.

> . . .

> Plaintiffs request that this Court[ a]ward Class Members retiree health care benefits, pursuant to the terms of the applicable collective bargaining agreements and the Plans, and such monetary damages and/or equitable relief as necessary to restore Class Members to the positions in which they would have been and should be but for defendants' contractual and statutory violations and wrongful conduct.

The mere recitation of the "plan-wide" language lifted from *Hill* will not justify a claim under § 502(a)(3) when § 502(a)(1)(B) relief is available. *Hill* involved an improper denial of benefits in the past and a current "improper methodology" for calculating benefits. 409 F.3d at 718. The Retiree Plaintiffs do not present an allegation of a flawed, systemic plan-wide methodology of calculating benefits.[10]

Instead, the Retiree Plaintiffs asked the district court for recovery of health benefits due under the plan (including monetary damages), a declaration of their rights to health benefits under the plan, and an injunction prohibiting the plan administrator from modifying or terminating retiree health benefits in the future. All of these remedies are cognizable under § 502(a)(1)(B). *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985) (explaining that there are three distinct remedies available under § 502(a)(1)(B): "an action . . . [1] to recover accrued benefits, [2] to obtain a declaratory judgment that [a participant or beneficiary] is entitled to benefits under the provisions of the plan contracts, and [3] to enjoin the plan administrator from improperly refusing to pay benefits in the future"). The Retiree Plaintiffs' additional claims for equitable relief pursuant to § 502(a)(3) are simply repackaged claims for benefits. Because § 502(a)(1)(B) fully provides a means for the relief sought by the Retiree Plaintiffs, further equitable relief pursuant to § 502(a)(3) is unavailable. Accordingly, we affirm the district court's dismissal fo the Retiree Plaintiffs' § 502(a)(3) claims for failure to state a claim under Rule 12(b)(6).

Before concluding, we also note that, in briefings before the district court, the Retiree Plaintiffs submitted extrinsic evidence alleging that the Defendants made misrepresentations about the Plan. The Retiree Plaintiffs proffered the declaration of a former Plant employee, Rodric R. Ball II, who retired in 1999 when M&G owned the plant. Ball stated that, during a 1998 meeting concerning retirement benefits, employees

---

[10]*Hill* differs from this case in several other important ways. In *Hill*, five named plaintiffs brought a putative class action against a defendant ERISA plan administrator. This Court held that only one of the named plaintiffs could successfully bring an action under § 502(a)(1)(B) for money damages because the other four named plaintiffs had failed to exhaust their remedies. The Court said that futility would not excuse the failure to exhaust administrative remedies prior to bringing the § 502(a)(1)(B) claim. Additionally, the Court held that exhaustion was important because of the "fact-intensive" nature of the individual claims under § 502(a)(1)(B). *Hill*, 409 F.3d at 723.

were "promise[d] . . . health coverage . . . at 'no cost.'"  Declarant Ball provided a two-page document that reads under the heading MEDICAL:  "Continued coverage at no cost under the current P&I Agreement."

Because the Retiree Plaintiffs included none of the facts or allegations Ball described in their Amended Complaint, we decline to consider the declaration.  We note, however, that the district court has discretion to permit a second amendment to the complaint "when justice so requires."  Fed. R. Civ. P. 15(a)(2).[11]

## IV.  Conclusion

We hold that the district court erred in treating a violation as a jurisdictional prerequisite and that it therefore erred in granting the Defendants' 12(b)(1) motion on the Plaintiffs' § 301 claim.  We additionally hold that the district court erred in concluding that the Plaintiffs had failed to state a claim for relief in their Amended Complaint, thereby erring in granting the Defendants' 12(b)(6) motion on the § 301 and ERISA claims.  Finally, we affirm the district court's dismissal of the Plaintiffs' § 502(a)(3) claim. Accordingly, we **REVERSE** and **REMAND**.

---

[11]Without passing on the merit of a § 502(a)(3) claim incorporating Ball's Declaration, we note that the analysis presented above on duplicative relief would not apply to a § 502(a)(3) claim based on the misrepresentation if the district court eventually determines that the Retiree Plaintiffs did not have a vested right to health-care benefits.  If the district court determines that the Retiree Plaintiffs did not have vested health-care benefits, the Retiree Plaintiffs, like the plaintiffs in *Varity*, would have "no 'benefits due [them] under the terms of [the] plan.'" *Varity*, 516 U.S. at 515.