**Charles E. MILLER, Plaintiff–Appellant,**

v.

**Geoffrey S. MEARNS; Kenneth R. Ramey; Lori Southwood; Northern Kentucky University, all in their individual and official capacities, Defendants–Appellees.**

No. 15–5557.

United States Court of Appeals, Sixth Circuit.

March 14, 2016.

Stephen E. Imm, Cincinnati, OH, for Plaintiff–Appellant.

Michael Wesley Hawkins, Kathleen A. Carnes, Dinsmore & Shohl, Cincinnati, OH, Andrew Bret Millar, Dinsmore & Shohl, Lexington, KY, for Defendants–Appellees.

BEFORE: COLE, Chief Judge; MERRITT and GRIFFIN, Circuit Judges.

OPINION

COLE, Chief Judge.

Charles Miller worked for several years as the general manager of WNKU, Northern Kentucky University's public radio station. In 2014, he was relieved from that post. Miller then sued in federal court, alleging that the University and its various administrators violated his right to due process by firing him without a pre-deprivation hearing. The district court disagreed and granted summary judgment to the University. We affirm.

I.

In December 2007, Miller was hired as the general manager of WNKU. Northern Kentucky University, a public institution of the Commonwealth of Kentucky, owns and operates this radio station. Several years later, however, the employment relationship deteriorated. Apparently, in 2012 and 2013, the station's finances began to falter. As WNKU suffered a "continued

decline in ... financial performance," the University and its administrators opted for a "new direction" and sought a "change in leadership."

In January 2014, Kenneth Ramey, the University's Vice President of Administration and Finance, sent Miller a letter terminating his employment as of the end of February. Dissatisfied with this turn of events, Miller filed an administrative grievance, contesting Ramey's decision to terminate him. Miller presented his grievance to a review committee and later met with Geoffrey Mearns, the University's President, all to no avail.

Mearns informed Miller of his final decision in March 2014. "After careful consideration," Mearns concluded that Miller was "not capable of effectively and successfully leading and managing WNKU." Mearns said that his decision was primarily compelled by "the poor financial performance of WNKU over the past few years" and Miller's "inability to correct this significant problem."

Miller then filed this action under 42 U.S.C. § 1983 in the Eastern District of Kentucky, alleging that the University and its administrators violated his Fourteenth Amendment right to due process by failing to provide him with (1) a hearing before firing him and (2) adequate review procedures after his termination. Miller also asserted a supplemental breach-of-contract claim under Kentucky law.

Miller's claimed right to relief hinged entirely on a few sections of the University's employment policies, selections of which he attached as an exhibit to his complaint. One excerpted provision, Section C 7.2, provides that "[u]nless immediate discharge is warranted, appropriate discipline procedures will be followed before an employee is terminated." According to Miller, Section C 7.2's express terms created "a protectable property interest in

his employment with the University and the Commonwealth of Kentucky." It followed, he claimed, that "the University and its responsible officials could not deprive [him] of his employment without due process."

The University filed a motion to dismiss Miller's complaint. See Fed.R.Civ.P. 12(b)(6). The University urged the district court to dismiss Miller's due process claims "because he [could not] ... establish[ ] that a constitutional violation occurred." In support of its motion, the University attached additional excerpts from its employment policies. In the University's view, Sections A 1.1 and 1.2 made clear that the policies are only "guides"— particularly so, given the power of "[t]he President of Northern Kentucky University [and] the Board of Regents" to make unilateral "changes and exceptions." Accordingly, the University argued that Miller was merely an "at-will" employee under state law and, therefore, did not have a constitutionally protected "property right in continued employment."

Several months later, the district court ruled on the motion. The court began by construing the University's motion to dismiss as a motion for summary judgment because it was "accompanied by certain sections of [the University's] employment policies that Miller did not reference in his complaint." See Fed.R.Civ.P. 12(d). It then resolved the dispositive legal issue: whether Miller had a "property interest" in his "continued employment" protected by the Due Process Clause. See Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 576–78, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). After reviewing the parties' filings and the employment policies, the court concluded that (1) Miller was presumed to be "an employee at will" under Kentucky law and (2) the referenced policies did not otherwise create "a protectable property

interest in his employment." Having disposed of Miller's federal claim, the court declined to exercise supplemental jurisdiction over the state law contract claim. In the end, the court entered summary judgment in favor of the University and dismissed Miller's claims with prejudice. This appeal followed.

## II.

Miller's sole contention on appeal is procedural. He argues that the district court erred by converting the University's motion to dismiss into a motion for summary judgment without providing "unequivocal notice" to the parties, *Yashon v. Gregory*, 737 F.2d 547, 552 (6th Cir.1984), and advocates for "strict compliance" with this rule. We are not persuaded.

Federal Rule of Civil Procedure 12(d) plainly states that, upon conversion, the parties need only be given a "reasonable opportunity to present all the material that is pertinent to the motion." It is well settled that we look to "the facts and circumstances of each case" to determine "[w]hether notice of conversion of a motion to dismiss to one for summary judgment ... [was] necessary," *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 204 (6th Cir.1998), and that "the absence of formal notice will be excused when it is harmless," *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 487–88 (6th Cir.2009) (quoting 5C C. Wright & A. Miller, Federal Practice and Procedure § 1366, p. 198 (3d ed.2004)). Our review is for abuse of discretion. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir.2010).

It cannot be said that Miller was "surprised" by these proceedings. *See Salehpour*, 159 F.3d at 204. Here, the University's motion to dismiss, despite its label, was "functionally ... the same" as a "summary-judgment motion ... made on the basis of the pleadings alone." *See* 10A Wright & Miller § 2713, at 222–23; *see*

*also* Fed.R.Civ.P. 56(b) ("[A] party may file a motion for summary judgment at any time."); *cf. Tackett*, 561 F.3d at 488. Indeed, Miller concedes that the University's motion and exhibit did not introduce any dispute of material fact by way of "affidavits, declarations, or other materials." Rather, the parties spent the next seven months arguing at length over the at-will employment issue on the basis of the uncontested facts and their competing legal interpretations of the employment policies. *See Wysocki*, 607 F.3d at 1105; *Salehpour*, 159 F.3d at 204. Thus, by the time the district court granted summary judgment, the due process issue "ha[d] already been fully briefed and no factual dispute exist[ed]." *See Harrington v. Vandalia–Butler Bd. of Educ.*, 649 F.2d 434, 436 (6th Cir.1981).

At any rate, Miller cannot tenably argue that he suffered prejudice. *See Tackett*, 561 F.3d at 487. Miller claims that the district court deprived him of "the chance to present additional evidence" that would have precluded summary judgment. For example, Miller states that, if given the opportunity, he would have demonstrated that the "employment policies played a role in [his] decision to work for [the University]" and "induced him to accept his position."

Whether this purported evidence actually exists is beside the point. Miller's claimed property interest in continued employment was solely based on the explicit provisions of the employment policies. *See Roth*, 408 U.S. at 576–77, 92 S.Ct. 2701. This "additional evidence," to the contrary, would speak to a whether Miller's interest in continued employment, "though not secured by a formal contractual tenure provision, was secured by a no less binding understanding fostered by the college administration." *See Perry v. Sindermann*, 408 U.S. 593, 599, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Miller's complaint

contained no allegations on this score, even though the factual predicates "fall entirely within [his] personal knowledge" and could have been produced "via affidavit." *See Wysocki*, 607 F.3d at 1105 n. 1. What is more, Miller never "ask[ed] the court to reconsider its judgment" on these grounds or for the chance "to submit additional material." *See Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 393 n. 2 (6th Cir.1975).

It is pointless to remand a case to the district court where it would "merely entail an empty formality with no appreciable possibility of altering the judgment." *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 829 (6th Cir.2013) (quoting *Excel Energy, Inc. v. Cannelton Sales Co.*, 246 Fed. Appx. 953, 960 (6th Cir.2007)).

Finally, Miller has waived any challenge to the substantive merits of the district court's decision. *See United States v. Johnson*, 440 F.3d 832, 845–46 (6th Cir. 2006.) Though we need not reach this issue, dismissal of Miller's complaint was appropriate even under a de novo standard of review. Under Kentucky law, the express terms of the University's non-binding employment policies did not secure a contractual right to continued employment. *See, e.g., Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 142–43 (6th Cir.1997); *Furtula v. Univ. of Ky.*, 438 S.W.3d 303, 309–10 (Ky.2014); *Shah v. Am. Synthetic Rubber Corp.*, 655 S.W.2d 489, 492 (Ky. 1983). As such, Miller had no constitutional property interest. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–39, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

### III.

The district court's judgment is affirmed.