**Richard E. LEACH, M.D.,**
**Plaintiff–Appellant,**

v.

**JEFFERSON PARISH HOSPITAL DISTRICT NO. 2, d/b/a East Jefferson General Hospital, et al., Defendant–Appellee.**

No. 88–3634.

United States Court of Appeals, Fifth Circuit.

April 19, 1989.

---

**1.** With the exception of the change in the name of the plaintiff in these statements they are identical in content.

R. James Kellogg, Jack Mark Stolier, Stephen M. Sullivan, Sullivan & Stolier, New Orleans, La., for plaintiff-appellant.

James Hritz, Lucas J. Giordano, Stassi, Rausch & Giordano, New Orleans, La., for defendant-appellee.

Before GEE, SMITH and DUHE, Circuit Judges.

GEE, Circuit Judge:

### Facts

In December 1986, East Jefferson General Hospital summarily suspended the physician privileges of the appellant, Dr. Richard E. Leach. The physician's suspension was upheld after a hearing before the Executive Committee of the Medical Staff and an appeal to the hospital's Board of Directors. The trial court found these actions were taken in accordance with hospital Medical Staff Bylaws.[1]

In March 1987, after Dr. Leach allegedly continued disruptive behavior despite his suspension, the hospital's Chief of Staff, Dr. Herbert W. Marks, asked the Louisiana State Board of Medical Examiners to invoke the Louisiana Medical Practitioner's Act to determine the appellant's fitness and ability to practice medicine.

---

**1.** Article VII of East Jefferson's Medical Staff Bylaws provides:

Section 2. Summary Suspension.

a. Anyone of the following: The Chief of the Medical Staff, the Chairman of a Clinical Department, the Administrator and the Executive Committee of either the Medical Staff or the governing body—shall each have the right, whenever action must be taken immediately in the best interest of patient care in the hospital, to summarily suspend all or any portion of the clinical privileges of a practitioner, and such summary suspension shall become effective immediately upon imposition. The affected practitioner shall be notified by certified mail, return receipt requested, of the suspension and the reason thereof. However, suspended physicians must keep themselves available for consultation.

b. A practitioner whose clinical privileges have been summarily suspended shall be entitled to request that the Executive Committee of the Medical Staff hold a hearing on the matter within such reasonable time period thereafter as the Executive Committee may be convened in accordance with Article VII of these Bylaws.

c. The Executive Committee may recommend modification, continuance or termination of the terms of the summary suspension. If as a result of such hearing, the Executive Committee does not recommend immediate termination of the summary suspension, the affected practitioner shall, also in accordance with Article VII, be entitled to request an appellate review by the governing body, but the terms of the summary suspension as sustained or as modified by the Executive Committee shall remain in effect pending a final decision thereon by the governing body.

Dr. Leach asked the Medical Executive Committee to lift his summary suspension on May 19, 1987. Dr. Marks responded that the Bylaws failed to provide for review after the suspension had been affirmed by the hospital's Board of Directors. About a week later, Dr. Leach sought an outline of the procedures for again becoming an active staff member from the defendant, Peter J. Betts, who was the President and Chief Executive Officer of the hospital. The request for information was referred to the Medical Executive Committee, which informed Dr. Leach of the hospital's longstanding policy of requiring a one year moratorium for reapplication to staff membership.

The Medical Executive Committee considered the moratorium an appropriate length of time for a disciplined physician to resolve his problems. Although the Bylaws do not stipulate such a moratorium, the East Jefferson Medical Staff's Credentials Committee Handbook recommends reapplication only after a period of at least one year.[2] Mr. Betts thus informed Dr. Leach that he could reapply on February 19, 1988, which was one year after the hospital Board affirmed his summary suspension.

Dr. Leach was also informed that the Medical Staff only accepts applications from physicians with licenses not encumbered by the Louisiana State Board of Medical Examiners. The State Board informed Dr. Leach in August 1987, that it would not restrict his license to practice medicine. Dr. Leach then sought reinstatement and the hospital's Medical Executive Committee decided to allow him to reapply in advance of the one year moratorium since the Louisiana State Board indicated he was solving his problem.

Instead of reapplying, however, Dr. Leach filed this lawsuit. The only issue was whether Dr. Leach was deprived of the due process and equal protection of the laws guaranteed by the Constitution. The trial court granted the defendant's motion for summary judgment, determining that there were no genuine issues of material fact. We affirm.

## Analysis

■ The appellant first argues that the hospital failed to follow its established rules and regulations. The trial court found, however, that the hospital reasonably followed its own rules in summarily suspending the appellant, and we agree. The hospital's Bylaws provided no guidance for reapplication after summary suspension, but the Committee Handbook delineated the policy of recommending a one year moratorium. The hospital clearly has a duty to protect patients and ensure their competent treatment. In addition, we note that courts are not the best fora for determining the competence of medical practitioners. As we have stated,

> No court should substitute its evaluation of such matters for that of the Hospital Board. It is the Board, not the court, which is charged with the responsibility of providing a competent staff of doctors.... The court is charged with a narrow responsibility of assuring that the qualifications imposed by the Board are reasonably related to the operation of the hospital and fairly administered.

*Sosa v. Board of Managers of Val Verde Memorial Hospital,* 437 F.2d 173, 177 (5th Cir.1971).

We agree with the trial court's finding that the measures employed by the hospital were reasonable. The appellant's argument that the hospital failed to follow its

**2.** The Medical Staff's Credentials Committee Handbook states:

H. *Reapplication After Adverse Finding*
The Bylaws are silent as to what to do with an applicant who has received a final adverse decision regarding appointment, staff category, department assignment or clinical privilege or wishes to reapply to the Staff. As a guideline, it is suggested that such an individual is not eligible for reapplication to the Medical Staff or for the denied category, department, or privileges for a period of at least one year. Any such reapplication shall be processed as an initial application, and the applicant must submit such additional information as the Staff or the Board may require in demonstration that the basis for the early adverse action no longer exists.

own rules and regulations is not supported by the record. In the one instance in which the hospital deviated from its stated policy, namely by shortening the length of the appellant's moratorium when it received evidence he was addressing his problems, it did so for his benefit. We find the appellant's argument of a due process violation unpersuasive and affirm the trial court's summary judgment on this issue.

The appellant also argues that the hospital rules and regulations were themselves inadequate to protect his constitutional interests. The argument must be evaluated in light of the United States Supreme Court's test for determining the sufficiency of procedures in safeguarding due process rights. In *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Court stated that due process requires considering the following factors:

> [F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. at 903 (citations omitted).

The first *Mathews* factor requires consideration of the private interest that will be affected. The private interest of Dr. Leach was his medical privilege. *See Darlak v. Bobear,* 814 F.2d 1055, 1061 (1987). This was, of course, a very important interest; but Dr. Leach was at liberty to practice medicine at other hospitals. In addition, Dr. Leach was permitted to reapply after a one year moratorium, a period of time that was later reduced by five months.

The second *Mathews* factor weighs the risk of wrongful deprivation from the procedures used against the probable value of other safeguards. As the trial court found, Dr. Leach was allowed to present any evidence he chose to bring forth, both at the hearing before the Executive Committee and the appeal before the hospital's Board. The record is devoid of any evidence that the appellant ever requested a delay in the proceedings. Nor is there any evidence that the Board acted unfairly to the appellant. The one year moratorium for reapplication was in fact shortened when the State Board informed the hospital, more than two months after the moratorium was imposed, that Dr. Leach was addressing his problems. In light of these circumstances, we are unable to say that the hospital failed to provide further necessary safeguards to protect the appellant's interests.

Finally, the hospital clearly has an interest in providing quality medical care to its patients. If a physician is disruptive or has personal problems, the hospital has a duty to intervene. *See Darlak, supra* at 1063. When the moratorium was imposed, both the Medical Executive Committee and the hospital Board had agreed that summary suspension was necessary. The procedural safeguards were adequate to ensure that the appellant's constitutional rights were protected.

On balance, the *Mathews* factors convince us that the hospital's duty to maintain quality health care for its patients decisively outweighs the burden on the appellant of reapplying for staff privileges. The procedures provided a "meaningful hedge against erroneous action," and due process requirements of notice and an opportunity to be heard were met. *See Goss v. Lopez,* 419 U.S. 565, 583, 95 S.Ct. 729, 741, 42 L.Ed.2d 725 (1975).

The appellant was not deprived of his constitutional rights to due process or equal protection when the hospital interpreted his summary suspension as permanent revocation and imposed the one year moratorium on reapplying for staff privileges. We therefore find the trial court properly granted the appellee's motion for summary judgment and the ruling is

AFFIRMED.