**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0718n.06

Nos. 09-5334, 09-5485, 09-6005

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Nov 17, 2010**
LEONARD GREEN, Clerk

ALEXANDER A. STRATIENKO, M.D., )
)
   **Plaintiff-Appellant,** )
)
v. )  ON APPEAL FROM THE
)  UNITED STATES DISTRICT
CHATTANOOGA-HAMILTON COUNTY )  COURT FOR THE EASTERN
HOSPITAL AUTHORITY; MEL TWIEST, )  DISTRICT OF TENNESSEE
individually and in his official capacity as Chief )
Medical Officer; V. STEPHEN MONROE, JR., )
M.D.; MITCHELL L. MUTTER, M.D.; )  **O P I N I O N**
DANIEL F. FISHER, M.D.; NITA SHUMAKER, M.D., )
)
   **Defendants-Appellees.** )
_____ )

Before: BOGGS, MOORE, and KETHLEDGE, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Six years of litigation in state and federal

courts have stemmed from Dr. Alexander Stratienko pushing Dr. Stephen Monroe in the staff break

room at Erlanger Hospital. After the hospital suspended Stratienko's privileges, he sued Monroe,

the hospital, and its executive staff members, alleging violations of due process and equal protection,

federal and state antitrust law, the Tennessee constitution, and contract and tort law. Although the

two doctors have settled their dispute,[1] Stratienko's claims against the hospital and its executive staff

_____

[1]No. 09-5485, orders of 6/08/2010 and 09/17/2010 (granting a motion by all parties to dismiss Monroe).

remain before this court. Stratienko has appealed unfavorable discovery rulings and the district court's grant of summary judgment to the defendants. For the reasons set forth below, we **AFFIRM**.

## I. BACKGROUND

Stratienko is an interventional cardiologist who, at the time of these events, practiced at Erlanger Hospital, a state entity affiliated with the Chattanooga-Hamilton County Hospital Authority. Monroe was also practicing at Erlanger. After speaking with another physician, Stratienko came to believe that Monroe had not performed enough peripheral vascular interventional procedures to sit on the carotid-stenting committee at Erlanger. Stratienko reported his concerns to Dr. Daniel Fisher, Erlanger's Chief of Medical Staff. Monroe learned of the report on September 16, 2004. Angry, Monroe sought out Stratienko in the staff break room.

According to the only witness, Missy Fugatt, Monroe asked Stratienko if Stratienko had "issues regarding [Monroe's] training." 1:07-cv-00258 R. 310-13 (Fugatt's Notes). The confrontation escalated until "Stratienko was yelling [at] Monroe," cursed at him, and got up "out of his seat quickly [and] appeared to lunge towards Monroe." *Id.* Both doctors agree that Stratienko made physical contact with Monroe, but they disagree about the extent of the contact. Stratienko says that he "pushed [Monroe] with . . . three fingers" to remove him from the doorway, 1:07 R. 85-2 (Stratienko Dep. at 133-19 to 133-21); Monroe claims that Stratienko "hit [him] forcefully in the chest," causing "residual discomfort and erythema [more than] 30 minutes" later, 1:07 R. 330-1 at 57–58 (Confidential Occurrence Report). Fugatt did not see the physical contact, but she witnessed Monroe "trip[] backwards" in response. 1:07 R. 6-2 at 23–24 (Fugatt Dep. 60–61).

Monroe filed an incident report, which prompted Dr. Mel Twiest, Chief Medical Officer at Erlanger, to investigate. First, Twiest spoke to Monroe and Fugatt. Next, Twiest informed members of the Medical Executive Committee ("Committee")—Fisher; Dr. Mitchell Mutter, Vice Chief of the Medical Staff; and Dr. Nita Shumaker, Secretary of the Medical Staff—but only sought Shumaker's opinion because Fisher and Mutter had conflicts of interest. Twiest signed a letter of suspension, which he planned to give to Stratienko when they met "[u]nless [their conversation revealed] something dramatically different than what everyone ha[d] described." 1:08-cv-00026 R. 142-5 at 14 (Twiest Note to File). Twiest spoke to Stratienko the next day. When Twiest asked what had happened, Stratienko confirmed that he had touched Monroe. Twiest handed Stratienko the letter of suspension dated September 16, 2004. The Credentials Committee recommended that the Committee uphold the suspension, which it did on September 24, 2004. The Committee informed Stratienko that he could request to appear at a Hearing Panel.

On September 20, 2004, Stratienko sued Erlanger and Twiest in Tennessee state court ("Case One"). The state court temporarily restrained the enforcement of Stratienko's suspension. An interlocutory appeal delayed the resolution of the case. Over three years later, on October 4, 2007, Stratienko filed his Second Amended Complaint to add Monroe, Mutter, Fisher, and Shumaker as defendants. His claims ranged from federal and state constitutional violations and antitrust violations to breach of contract and state law torts. The defendants removed the case to the United States District Court for the Eastern District of Tennessee. After the district court denied his motion to remand the case, Stratienko withdrew his motion to strike his federal claims.

3

In 2008, Stratienko again sued Erlanger in state court ("Case Two"). Erlanger had conditioned Stratienko's 2007 reappointment on the outcome of Case One. In Case Two, Stratienko claimed that Erlanger had waived its ability to condition future contract renewals by not conditioning his 2005 renewal. Case Two was removed to federal court and consolidated with Case One, and the district court denied a motion to remand Case Two.

During discovery, the magistrate judge found that Erlanger had committed discovery violations by (1) destroying Twiest's computer hard drive after he retired; (2) not producing all of laboratory manager Craig Cummings's journal notes; and (3) destroying a phone log kept by Twiest's assistant. The magistrate judge did not sanction Erlanger for denying the existence of procedure logs from the cardiac catheterization lab because Stratienko had not certified his compliance with the conference requirement of Federal Rule of Civil Procedure 37(a)(1). The magistrate judge found several sanctions appropriate: reimbursement for Stratienko's expenses, adverse inferences, and additional discovery as to the three violations. The district judge did not consider the sanctions until after it had disposed of the case, but later ordered Erlanger to pay $1,000 of the $22,853.50 reimbursement for attorneys' fees that Stratienko had requested. The district judge did not rule on adverse inferences or the issue of additional discovery.

On March 17, 2009, the district court ruled on dispositive motions from all defendants except Erlanger. The statute of limitations had run for all claims against Mutter, Fisher, and Shumaker except the antitrust claims, so the court dismissed the time-barred claims. On the antitrust claims, the district court granted state-action immunity to Mutter, Fisher, and Shumaker, who acted on

4

behalf of the hospital, and to Twiest, a state employee. The district court granted Twiest's motion for summary judgment on the merits of the claims regarding substantive and procedural due process and equal protection. Because the issues as to the hospital were indistinguishable from those as to Twiest, the district court also granted summary judgment sua sponte to Erlanger. With only state-law claims remaining, the district court remanded the case to state court.

## II. ANALYSIS

The district court had federal-question jurisdiction over Stratienko's federal claims and exercised supplemental jurisdiction over the state-law claims. 28 U.S.C. §§ 1331, 1367, 1441(a). This court has jurisdiction over the district court's final decision pursuant to 28 U.S.C. § 1291.

### A. Remand

We review the denial of a motion to remand de novo. *See Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006). Stratienko withdrew his motion to amend his complaint and, to this day, alleges violations of his federal due process and equal protection rights. The district court did not err by retaining these indisputably federal claims, and it properly exercised its supplemental jurisdiction over the remainder of both cases.

### B. Conversion of the Motions to Dismiss to Motions for Summary Judgment

The district court should have converted the Federal Rule of Civil Procedure 12(b)(6) motions into motions for summary judgment because it accepted outside evidence. *See* Rule 12(d); *Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494, 503 (6th Cir. 2006) (applying Rule 12(c)). Conversion to summary judgment normally requires notice and an opportunity to respond.

*Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 487–88 (6th Cir. 2009). But the failure to notify Stratienko was harmless because he "in fact had a sufficient opportunity to present pertinent materials." *Max Arnold*, 452 F.3d at 504; 1:07 R. 210-1 to 210-24 (cataloging over 375 pages of evidence that accompanied Stratienko's response). We will review the district court's rulings de novo as ones for summary judgment, drawing all inferences in Stratienko's favor, and ruling for the defendants if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."[2] *Miller v. Sanilac Cnty.*, 606 F.3d 240, 246 (6th Cir. 2010).

## C. Tolling the Statute of Limitations

Stratienko waited over three years before naming Mutter, Fisher, and Shumaker as defendants. Relevant Tennessee law provides a one-year statute of limitations for civil rights claims and a three-year statute of limitations for claims about tortious interference with contracts.[3] Tenn. Code Ann. §§ 28-3-104 to -105; 1:08 R. 303 (Dist. Ct. Op. Granting Summ. J. at 16–23). Tennessee tolling provisions apply to this case, *see Bishop v. Children's Ctr. for Developmental Enrichment*,

---

[2]With no citations to the record or to case law, Stratienko baldly asserts that the district court did not take facts in Stratienko's favor when deciding the motions for summary judgment. He has waived the claim by failing to argue the point. *See Buziashvili v. Inman*, 106 F.3d 709, 719 (6th Cir. 1997).

[3]Stratienko "incorporates . . . by reference" about twenty pages from his district court filings in which he argued for longer statutes of limitations. We will not review those arguments. *See Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 452-53 (6th Cir. 2003) (rejecting arguments incorporated by reference from pleadings submitted to lower courts because the practice circumvents word limitations and forces the court "to play archaeologist with the record") (internal quotation marks omitted).

618 F.3d 533, 538 (6th Cir. 2010), but the three bases for tolling that Stratienko mentions are inapplicable.

First, Stratienko has not shown continuing misconduct. Under Tennessee law, the statute of limitations does not run until "the last overt act" in a continuing conspiracy. *Emerson v. Machamer*, 431 S.W.2d 283, 286 (Tenn. 1968). Contrary to Stratienko's interpretation, however, the letters between him and Fisher do not create a genuine issue of material fact about ongoing theft of Stratienko's patients. The district court correctly found that some letters represented "Fisher *turning over* a patient to Plaintiff for longitudinal followup" and Fisher explaining that Monroe "will *continue* to evaluate kidney transplant patients . . . per an existing agreement, in the name of consistency and standardization of cardiac evaluations." 1:08 R. 303 (Dist. Ct. Op. Granting Summ. J. at 8); *see also* 1:08 R. 55-15 at 3 (Letters). Case Two and the medical-staff election memorandum—in which the defendants alluded to Stratienko's "personal battles with the valid peer review process," 1:08 R. 55-12 (Election Memorandum)—are irrelevant to the facts underlying peer review, so neither demonstrates continuing misconduct.

Second, the doctrine of equitable tolling is not recognized in Tennessee law. *Norton v. Everhart*, 895 S.W.2d 317, 321 (Tenn. 1995); *B & B Enters. of Wilson Cnty., LLC v. City of Lebanon*, No. M2008-00572-COA-R9-CV, 2009 WL 130188, at *3 n.4 (Tenn. Ct. App. Jan. 14, 2009) (unpublished opinion), *aff'd*, 318 S.W.3d 839 (Tenn. 2010).

Third, the discovery rule does not toll the relevant Tennessee statute of limitations. In Tennessee, a claim accrues when a plaintiff learns or reasonably should have discovered "the

occasion, the manner[,] and [the] means" of his injury and the people who caused it. *Foster v. Harris*, 633 S.W.2d 304, 305 (Tenn. 1982). Stratienko cannot credibly deny knowledge of or the ability to discover who was charged with administering and conducting professional reviews at the hospital where he worked. *See, e.g.*, *Steele v. Tenn. Jaycees, Inc.*, No. 01-A-01-9505-CH00214, 1995 WL 623067, at *5 (Tenn. Ct. App. Oct. 25, 1995) (unpublished opinion) ("The plaintiffs . . . cannot argue that they had no idea who the responsible parties might be, since they were aware that the[] decedent was attending Camp Discovery at the time of his death."). Because tolling was unavailable, Stratienko's non-antitrust claims against Mutter, Fisher, and Shumaker were time barred.

## D. Constitutional Claims Against Twiest

The due process and equal protection claims against Twiest were timely, but summary judgment was appropriate as to these claims on the merits.

Stratienko's equal protection claim, even if not waived, cannot survive the rational-basis scrutiny to which it is subject. Stratienko, who is not a member of a suspect class, is also not a cognizable "class of one." Medical-privileges revocation is discretionary: no simple calculation will determine whether a physician should be suspended, and each judgment is fact-laden. *See Benjamin v. Brachman*, 246 F. App'x 905, 928 (6th Cir. 2007) (unpublished opinion) (applying *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), to the medical-privileges context).

The requirements of due process are "flexible" to match the circumstances. *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). Although Stratienko argues to the contrary, compliance with

organizational bylaws is not a mandatory requirement of due process. *Purisch v. Tenn. Technological Univ.*, 76 F.3d 1414, 1423 (6th Cir. 1996). Even assuming that Stratienko received inadequate pre-suspension due process, post-suspension notice and opportunity to be heard can suffice in the context of hospital-privilege suspensions.[4] *See Beyer v. Lakeview Cmty. Hosp.*, No. 98-1813, 1999 WL 552606, at *3 (6th Cir. July 26, 1999) (unpublished opinion); *accord Caine v. Hardy*, 943 F.2d 1406, 1412 (5th Cir. 1991) (en banc); *Everett v. Franciscan Sisters Healthcare, Inc.*, 882 F.2d 1383, 1387 (8th Cir. 1989). Disruption and consequent distraction affect hospital operations in a way that is intrinsically linked with safety. *See Leach v. Jefferson Parish Hosp. Dist. No. 2*, 870 F.2d 300, 303 (5th Cir. 1989). Stratienko's deprivation was moderated because his suspension was temporary and only effective at one hospital. *See id.* The later availability of a Hearing Panel provided protection against the risk of wrongful deprivation.

**E. Antitrust Claims**

There is no evidence that Mutter or Fisher participated in Stratienko's suspension, so they could not have conspired to restrain interstate trade. Summary judgment as to them was proper.

Twiest and Shumaker have state-action immunity. The Sherman Act does not prohibit states from participating in anti-competitive conduct. *Parker v. Brown*, 317 U.S. 341, 350–51 (1943). State-action immunity extends to state subdivisions such as Erlanger when they act "pursuant to a clearly expressed state policy" that "displace[s] competition with regulation or monopoly public

---

[4]The district court's prior denial of summary judgment to Erlanger on ostensibly similar legal grounds is irrelevant to our de novo review.

service." *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 38–40 (1985). Tennessee law provides a clear policy of letting private-act hospitals like Erlanger determine privileges without regard to competitive consequences. *Jackson, Tenn. Hosp. Co. v. W. Tenn. Healthcare Inc.*, 414 F.3d 608, 614 (6th Cir. 2005).

Jim Brexler, Erlanger's Chief Executive Officer, had designated Twiest, a state employee, to handle all summary suspensions. Twiest is entitled to state-action immunity because he acted with authority. Whether he acted with malice is irrelevant. *Cohn v. Bond*, 953 F.2d 154, 159 (4th Cir. 2001).

Generally, non-employees like Shumaker are immune when they (1) perform "official action" at the direction of a local-government official acting in an official capacity, 15 U.S.C. § 36, and (2) are actively supervised to ensure that their "conduct promotes state policy" and not "individual interests," *Patrick v. Burget*, 486 U.S. 94, 101 (1988). But "[w]hen the staff as a group makes decisions or recommendations for the hospital in areas that do not affect the market in which they compete as individuals," staff members act "as agents of the hospital." *Nurse Midwifery Assocs. v. Hibbett*, 918 F.2d 605, 614 (6th Cir. 1990); *accord Crosby v. Hosp. Auth. of Valdosta & Lowndes Cnty.*, 93 F.3d 1515, 1529 (11th Cir. 1996); *Cohn*, 953 F.2d at 157–58. The documents that Stratienko cites do not demonstrate that Shumaker, a pediatrician, was in competition with Stratienko. Thus, she is entitled to state-action immunity.

## F. Sua Sponte Grant of Summary Judgment to Erlanger

We review "the substance" of the sua sponte grant of summary judgment de novo and the "procedural decision to enter summary judgment sua sponte . . . for abuse of discretion." *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000). The need for actual notice "depends on the facts and circumstances of each case," and it is required if a "party is likely to be surprised by the proceedings." *Id.* (internal quotation marks omitted). Stratienko did not have notice, but he could not have been surprised by the court's decision. Even now, Stratienko has not explained—and it is not obvious—how his claims against Erlanger differed from the factually identical claims that he asserted against the other defendants. With respect to both substance and procedure, summary judgment was proper.

## G. Discovery Disputes

We review discovery sanctions and limits on discovery for abuse of discretion. *B & H Med., LLC v. ABP Admin., Inc.*, 526 F.3d 257, 268 (6th Cir. 2008); *Phillips v. Cohen*, 400 F.3d 388, 396 (6th Cir. 2005). "An abuse of discretion occurs when (1) the district court's decision is based on an erroneous conclusion of law, (2) the district court's findings are clearly erroneous, or (3) the district court's decision is clearly unreasonable, arbitrary or fanciful." *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 343 (6th Cir. 2002) (internal quotation marks omitted). The district court did not abuse its discretion in any of the contested discovery rulings.

### 1. Attorneys' Fees

The district court did not err in awarding only $1,000 of the attorneys' fees that Stratienko sought under Federal Rule of Civil Procedure 37(a)(5). The district court relied on cases that invoked Rule 37(c), but deterrence of vexatious conduct is a purpose of Rule 37(a)(5) as well. *See Cunningham v. Hamilton Cnty.*, 527 U.S. 198, 207–09 (1999). The district court's statements show that it knew compensation was another purpose of the award. Thus, the district court employed the correct legal standard. It also provided several reasons for the small award that were neither unreasonable nor arbitrary: (1) specific deterrence was less important because litigation had ended; (2) the spoliated evidence was "of *de minimis*, if any, value"; and (3) Stratienko's "pugnacious" and "scorched-earth approach to litigation" made it unfair to use Erlanger as an example for general deterrence. 1:07 R. 556 (Dist. Ct. Op. on Sanctions 11-12).

### 2. Adverse Inference for Spoliation of Evidence

Six weeks before summary judgment was entered, Stratienko moved for an application of adverse inferences regarding material not produced from Twiest's hard drive, Cummings's journal notes, and the phone log of Twiest's secretary, but the district court considered the issue only afterward, when it denied the motion as moot. Even if we credit Stratienko's assertion that this denial constitutes a final, appealable order declining to impose adverse inferences, any error was harmless because summary judgment would have been appropriate even with adverse inferences. *Cf. Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783, 797 (6th Cir. 2006) (unpublished

opinion).  The district court properly found that the evidence and corresponding inferences were "discrete" and "of *de minimis*, if any, value."  1:07 R. 556 (Dist. Ct. Op. on Sanctions 12).

We leave to the Tennessee courts the choice of what, if any, adverse inferences to apply in the remainder of the case that has been remanded to the state courts.

### 3.  Sanctions for Failure to Comply with Production Orders

Erlanger never filed a notice of appeal, so we lack jurisdiction to reduce its sanctions.  *See* FED. R. APP. P. 3(a)(1); *Francis v. Clark Equip. Co.*, 993 F.2d 545, 552 (6th Cir. 1993).

The district court did not err by not sanctioning Erlanger when it failed to produce the lab procedure log.  It was within the court's discretion to find that past conferrals mentioned in other motions fail the requirement of Rule 37(a)(1) that *each* motion "must include" certification of a good-faith attempt to confer.

### 4.  Additional Discovery

Stratienko cannot "show that he could obtain information through [reopened] discovery that would disclose material facts."  *Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010) (internal quotation marks omitted).  The requested deposition of lab-manager Cummings would relate to *pre-*deprivation due process, which is immaterial.  The district court also acted within its discretion when it concluded that searching hard drives and deposing the e-discovery company would expend time and money unnecessarily.

### III.  CONCLUSION

For the reasons discussed above, we **AFFIRM** the district court's discovery rulings and its

grant of summary judgment to the defendants.